448 P.2d 907

Harold SULLIVAN, Plaintiff
and Appellant,

v.

John W. TURNER, Warden, Utah State
Prison, Defendant and Respondent.

Nos. 11217, 11363.

Supreme Court of Utah.

Dec. 24, 1968.

No. 11217:

Clair M. Aldrich, of Aldrich, Bullock & Nelson, Provo, for appellant.

Phil L. Hansen, Atty. Gen., LeRoy S. Axland, Asst. Atty. Gen., Salt Lake City, for respondent.

No. 11363:

Harold Sullivan, pro se.

Phil L. Hansen, Atty. Gen., Gerald G. Gundry, Asst. Atty. Gen., Salt Lake City, for respondent.

CROCKETT, Chief Justice:

Harold Sullivan, serving a sentence in the Utah State Prison imposed pursuant to his plea of guilty to passing a worthless check,[1] sought release by two petitions, one in habeas corpus and one in coram nobis. Upon plenary trials in different divisions of the District Court of Utah County, the respective trial judges rejected his petitions and he appeals.

The petitioner makes two contentions: (1) That his plea of guilty was coerced by a threat that an habitual criminal charge would be filed against him; and (2) that no crime was committed because he in fact had credit with the drawee bank to cover the check in question.

The effort to upset this conviction in this manner must be considered in con-

1. Sec. 76–20–11, U.C.A.1953.

nection with our rules of procedure. When an accused is convicted of a crime, our law requires that any claimed error or defect be corrected by a regular appeal within the time allowed by law, and if this is not done the judgment becomes final. It can then be subjected to collateral attack by an extraordinary writ only when the interests of justice so demand because of some extraordinary circumstance or exigency: e. g., lack of jurisdiction, mistaken identity, where the requirements of law have been so ignored or distorted that the accused has been deprived of "due process of law," or there is shown to exist some other such circumstance that it would be unconscionable not to review the conviction.[2]

From our review of this record, we are not persuaded that the petitioner met the requirements just discussed with respect to either of his contentions. We first direct attention to petitioner's claim that he was coerced into making a plea of guilty. He was represented by competent counsel, Mr. Dean W. Payne, who appeared to manifest a serious interest in his behalf. A plea of not guilty by reason of insanity was entered. The court appointed two psychiatrists, both of whom reported that petitioner was competent. Thereafter he appeared in court with his attorney and stated his desire to withdraw his plea of not guilty and plead guilty. Judge Sorensen expressed his special concern for an accused where doubt had been raised as to his competency. He proceeded with what impresses us as particular care to question petitioner's counsel, Mr. Payne, the petitioner, and the district attorney, Mr. Ivins, to be sure that petitioner understood what he was doing; that his change of plea was voluntary; and was not induced or coerced by any promise or threat. This colloquy included the following:

> The Court: Has *anybody* made any threats or promises to get that change of mind from you?

> The Defendant: None at all, sir.

The foregoing is inconsistent with petitioner's present contention that he understood that he was saying only that the *district attorney* had made no threat or promise, and that it did not include the *sheriff*, who he now claims had made a threat which coerced him into pleading guilty. Nevertheless, we also examine the testimony of the sheriff upon which the petitioner places his reliance. He admitted mentioning to the petitioner that because he had been previously convicted of other felonies, there was a possibility that an habitual criminal charge would be filed, but in response to the petitioner's question as to what he could do, the sheriff stated:

---

2. See Bryant v. Turner, 19 Utah 2d 284, 431 P.2d 121; cf. also Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837.

\* \* \* I says, 'That is entirely up to you, Harold, whatever you do.' And he says, 'Well, I wrote the check.' And I says, 'Well, then, that is up to you, the way you plead or whatever you do, because I am in no position to make any promises whatsoever. *The county attorney files the complaints and the judge makes the decision,*' and I say, 'that is as far as I can go.'

Answering other questions the sheriff forthrightly denied making any threat or promise to petitioner to persuade him to plead guilty.

In whatever light the foregoing testimony is viewed, it could hardly be distorted into what the petitioner would have to have to aid him here: evidence which would compel a finding by the trial court that petitioner's plea resulted from coercion.

■ The principles above stated likewise apply to the petitioner's efforts to obtain his release under the writ coram nobis on the ground that no crime had been committed because he had credit with the bank. In that regard, we acknowledge that this court has recognized the availability of that writ in a proper case.[3] But its use is even more rare and restricted than that of habeas corpus. It can properly be invoked only where there has been some mistake of *fact* which, if the truth had been known, would have prevented the conviction; and the failure to make known such fact must have been without fault or neglect on the part of the accused, in that it must be something which he could not by the exercise of reasonable diligence have discovered and presented before the conviction, unless it is shown that he was prevented from presenting the evidence in some manner which would excuse him from having done so.[4] There can be no question but that the facts concerning petitioner's credit with the bank were known to the petitioner and his counsel at the time he pleaded guilty.

In support of his petition, the testimony of Wilma Wooton, payee of another worthless check upon which petitioner was charged, was offered to the effect:

\* \* \* Harold [Sullivan] came to me and asked me to hold the checks and I took them with the understanding, knowing that I was loaning him this money.

There are two points of interest about this testimony: Assuming this witness, who had signed a complaint charging that petitioner passed the check with intent to defraud her, was telling the truth in her later statement: It does not relate to the check upon which the conviction from which petitioner

3. See Neal v. Beckstead, 3 Utah 2d 403, 285 P.2d 129; State v. Woodard, 108 Utah 390, 160 P.2d 432.

4. See Butt v. Graham, 6 Utah 2d 133, 307 P.2d 892; and People v. Shipman, 62 Cal.2d 226, 42 Cal.Rptr. 1, 397 P.2d 993.

seeks release is based. Further pertinent is the fact that her proffered evidence and that of the petitioner himself are mutually inconsistent. It was his contention that he had credit, nor with the *payees* of the checks, but with the bank, as indicated by the following statement to the court:

The Court: You had no funds in the account in the bank on May 7th?

Mr. Sullivan: No I didn't, but I had a *credit* with the bank, as far as I was concerned, and as far as I knew.

It is also shown that the check upon which the instant conviction is based was one of many worthless checks, amounting to many thousands of dollars, which had been issued by the petitioner and which were then outstanding. It seems quite obvious that the plea of guilty on the one check was entered as the best way out of a bad situation; and that after commitment and lapse of time the instant proceedings were instituted in an effort to focus upon the single check and upset the conviction. Perhaps the petitioner should not be blamed for this effort. Nevertheless, as will be seen from what has been said above, he has not succeeded in providing a basis for nullifying the judgment.

It should also be pointed out that there is a basic fallacy in the propositions urged by the petitioner: He assumes that the trial court was obliged to believe his evidence and draw conclusions favorable to him therefrom. The law is to the contrary. Petitions in habeas corpus and coram nobis are generally regarded as being analogous procedurally to civil proceedings.[5] The petitioner has the burden of persuading the trial court by a preponderance of evidence facts which will entitle him to relief. When the trial judge has made findings of fact and entered judgment thereon, they are entitled to the presumption of correctness; on appeal the evidence is surveyed in the light favorable to them; and if there is any reasonable basis in the evidence to support them they will not be overturned.[6]

For the reasons set forth herein the judgments of the trial courts in denying the petitions are affirmed. No costs awarded. (All emphasis added.)

CALLISTER, TUCKETT, HENRIOD and ELLETT, JJ., concur.

5. Habeas Corpus, see State v. Kelsey, 64 Utah 377, 231 P. 122; 39 Am.Jur.2d 184; 39 C.J.S. Habeas Corpus § 2, p. 426; Coram Nobis, People v. Fowler, 175 Cal.App.2d 808, 346 P.2d 792, 18 Am. Jur. 451, 24 C.J.S. Criminal Law § 1606 (2), p. 669.

6. McGuffey v. Turner, 18 Utah 2d 354, 423 P.2d 166, and cases cited therein.