452 P.2d 551

**Joe S. VALDEZ, Plaintiff and Appellant,**

**v.**

**STATE of Utah, Defendant and Respondent.**

**No. 11352.**

Supreme Court of Utah.

March 26, 1969.

Ronald N. Boyce, Salt Lake City, for appellant.

Phil L. Hansen, Atty. Gen., Gerald G. Gundry, Asst. Atty. Gen., Salt Lake City, for respondent.

CALLISTER, Justice:

This is an appeal from a judgment of the district court denying the petition of Joe S.

Valdez for a writ of error coram nobis to set aside his conviction of the crime of assault with a deadly weapon and to grant him a new trial.

The judgment of conviction, based upon a jury verdict of guilty, was appealed and this court affirmed.[1] At the trial, Valdez had been identified by the victim, Jose Don Valerio, as the person who had stabbed him. There were no other witnesses who testified that Valdez did the stabbing. Valdez denied the stabbing and was corroborated to some extent by his girl friend, Shirley Wilkerson.

Valdez's petition for writ of coram nobis is based upon newly discovered evidence which is to the effect that one Kelly Valdez was told by the victim, after the stabbing but before trial, that he was not sure who had stabbed him; also that Shirley Wilkerson had failed to include in her trial testimony the fact that she had seen an Indian put a knife in his pocket during the affray in the tavern.

■ A hearing was held upon Valdez's petition at which both Kelly Valdez and

Miss Wilkerson testified. The latter told her story concerning the Indian and explained that her failure to so testify at the trial was at Valdez's request because the Indian was his friend. For obvious reasons this changed testimony cannot be classed as newly discovered evidence and could not even remotely support the petition.[2]

■ As to the evidence which Kelly Valdez attempted to supply, he testified that he, along with Miss Wilkerson and petitioner's wife, paid a visit to Valerio's home shortly after the day of the stabbing. A conversation took place with Valerio's wife being present. According to Kelly, (who characterized himself as a "far away cousin" of petitioner) Valerio, during the course of the conversation, stated that he was not sure who stabbed him. Both Valerio and his wife denied that such a statement was made. Kelly also testified that he did not impart this information to petitioner until after the latter had been convicted and was serving time in the State Prison.

In dismissing the petition, the trial court made written findings to the effect that Valerio had not made such a statement and

1. State v. Valdez, 19 Utah 2d 426, 432 P.2d 53 (1967). A recital of the facts relating to the incident is set forth in this case.

2. See: Sullivan v. Turner, 22 Utah 2d 35, 448 P.2d 907, 909 (1968). " * * * It [writ of coram nobis] can properly be invoked only where there has been some mistake of *fact* which, if the truth had been known, would have prevented the conviction; and the failure to make known such fact must have been without fault or neglect on the part of the accused, in that it must be something which he could not by the exercise of reasonable diligence have discovered and presented before the conviction, unless it is shown that he was prevented from presenting the evidence in some manner which would excuse him from having done so. * * *"

that Valerio knew at the time of the assault the identity of his assailant (Valdez) and still does.

These findings are more than justified by the evidence presented at the hearing. Kelly's testimony was vague and weak,[3] to say the least, and the court below was entitled to disbelieve him and believe the testimony of the Valerios.

Since the trial court found that this "newly discovered evidence" did not exist, the petition for writ of error coram nobis was properly dismissed.

Affirmed.

CROCKETT, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.

---

3. E. g., (on cross-examination):
Q: Did you have any purpose other than to take Miss Wilkerson to Valerio's home in going yourself?
A: No, I didn't.
Q: Did you only have a conversation with Mr. Valerio?
A: No, I just wanted to see him, to see how he was.
Q: Did Miss Wilkerson have a conversation with him?
A: I really don't know.
Q: Did they have a conversation?
A: Well, they talked there for awhile.
Q: Did it concern the stabbing of Mr. Valerio by Joe Valdez?
A: Well, no, not really.
Q: Isn't it a fact that there was an offer to pay the medical bills at that time?
A: I really don't know.
Q: Don't you recall?
A: I don't.
Q: How much was there of your conversation, do you recall?

A: Well, we just talked there for awhile and I don't know.
Q: Is it clear in your mind, now, what was said?
A: No, it's not.
Q: It's not very clear?
A: No.
Q: Only the part where you can—you contend that Mr. Valerio said he didn't know who stabbed him, is that clear in your mind?
A: That's right.
Q: Does that stick above the facts, the conversation of anything that was said that day?
A: Well, I wasn't paying too much attention what we were talking about.
Q: It's possible that he didn't say that, isn't it?
A: Say what?
Q: Say that he didn't know who stabbed him.
A: He did—he said that.