STATE of Utah, Plaintiff and
Respondent,

v.

Alfred Bennie WILSON, Defendant
and Appellant.

No. 16198.

Supreme Court of Utah.

Feb. 26, 1980.

Robert Van Sciver, Edward K. Brass, Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Craig L. Barlow, Asst. Atty. Gen., Salt Lake City, Noall T. Wootton, Utah County Atty., Provo, for plaintiff and respondent.

HALL, Justice:

Defendant appeals from a conviction of robbery,[1] and from a subsequent dismissal of his petition for a writ of coram nobis.

At about 8:00 or 8:30 p. m. on the night of June 29, 1978, an individual entered the office of a service station in Orem, Utah, and conversed for a matter of minutes with the attendant and victim of the robbery, Jared Harper. The person then left, but, according to Harper's testimony, returned at approximately 9:55 p. m., asking change for a dollar bill. As Harper turned, the person struck him over the head twice. Harper fell to the floor, feigning unconsciousness, while his assailant proceeded to take $143.00 in cash from the register.

At trial, Harper testified as to when and how the robbery occurred, and identified defendant as his assailant. He identified in court a photocopy of a composite drawing prepared by the police from his description the day following the robbery, and also identified a photograph of defendant as that which he had selected from a group of eight photos shown him by police immediately subsequent to the construction of the composite drawing. No objections were made by defense counsel to the admission of the photocopy of the drawing, or to that of the eight photographs from which Harper selected that of defendant.

Defendant produced four witnesses who testified regarding defendant's whereabouts at the time of the robbery, in the interest of establishing an alibi. Defendant's mother, father, and brother all testified that on the evening the crime was committed, defendant had been working on a car in the family yard from 7:00 p. m. until about 9:15 p. m. At that time, defendant was picked up by one Mitch Powell, who also testified. The two proceeded together to pick up one Jim Hindley at the home of Jane Elsmore, Hindley's grandmother. The three then drove to Casey's Billiards, arriving there at 10:10 p. m. At 10:20 p. m. they then drove to Reed's Billiards, remaining there until 12:30 a. m.

The jury returned a verdict of guilty, from which an appeal was timely filed on December 20, 1978. On February 7, 1979, defendant asserted that he had learned of an additional witness who could allegedly corroborate the testimony offered at trial

1. In violation of U.C.A., 1953, 76–6–301.

with regard to defendant's alibi defense. As the time for motion for new trial had expired,[2] relief was sought in the form of a writ of coram nobis. The trial court dismissed the petition for the writ as being without merit.

■ Defendant raises several points on appeal. He first claims that the evidence was insufficient to convict him of robbery because reasonable minds could not have concluded beyond a reasonable doubt that defendant committed the offense. He bases this contention on Harper's alleged inability to identify defendant as the perpetrator of the crime and on the weight of the testimony of defense witnesses relating to alibi. Basically, the judging of the credibility of the witnesses and the weight of the evidence is exclusively the province of the jury.[3]

■ We are satisfied that there was sufficient evidence for the jury to believe Harper's testimony over the alibi testimony offered by defendant's family and friend. Harper had more than a fleeting glance of his attacker. He had seen and talked to the person face to face for two or three minutes earlier in the evening, and at the time of the attack he had another six to ten second look at his face—sufficient to convince him that it was the same person who entered the office earlier. The contact between the two at this later time took place in a well-lighted office and was sufficiently close to allow the transfer of a dollar bill. Even after being struck on the head, Harper was able to give the police a description of his assailant that evening and the following day, and to identify defendant as the perpetrator of the crime. A reasonable mind could conclude from the evidence that defendant was guilty of the crime charged.

■ Defendant's second point on appeal is an assertion that the in-court identi-fication of defendant was impermissibly tainted and should have been suppressed. At trial, Harper identified defendant as his attacker and defendant now claims that the identification was induced by the processes of preparing the composite drawing and selecting a photograph, rather than by Harper's independent recollection. The defense failed to object to Harper's in-court identi-fication; hence defendant cannot assail the admissibility of such evidence on appeal.[4] Nevertheless, looking to the totality of the circumstances, there were no external, suggestive elements in the identification procedure used in this case which made it all but inevitable that Harper would identify defendant as his assailant.[5] The composite drawing was the product of Harper's own memory, which composite may or may not have aided him in choosing the assailant from a selection of eight photographs. Harper testified that he would have identi-fied defendant even without the photographic process, but even if the process helped in identifying defendant, it would not be impermissible unless it could be shown that some external, suggestive influence tainted the identification. No such showing has been made here.

The third point raised on appeal is a claim that the admission in evidence of a photocopy of the composite drawing violated the "best evidence rule." Rule 70, Utah Rules of Evidence provides, in pertinent part, as follows:

(1) As tending to prove the content of a writing, no evidence other than the writing itself is admissible, except as otherwise provided in these rules, unless the judge finds (a) that the writing is lost or has been destroyed without fraudulent intent on the part of the proponent, . . .

(2) If the judge makes one of the find-ings specified in the preceding paragraph,

---

2. A motion for a new trial following a criminal conviction must be made within five days of entry of judgment. See U.C.A., 1953, 77–38–4.

3. *State v. Wilson,* Utah, 565 P.2d 66 (1977).

4. Rule 4, Utah Rules of Evidence.

5. *State v. Wettstein,* 28 Utah 2d 295, 501 P.2d 1084 (1972), citing *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) and *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

secondary evidence of the content of the writing is admissible.

 The original of the composite drawing was not available at trial.[6] After a photocopy of the drawing was authenticated by Harper and one Officer Berhow, it was received in evidence. Thus, it appears that the situation falls squarely within the exception of the Rule cited supra. The trial court admitted secondary evidence after he had found that the destruction of the original was not done with fraudulent intent. Furthermore, given the photograph identification and in-court identification, the admission of the photocopy did not prejudice defendant's substantive rights which would justify a reversal of the conviction.[7]

 Finally, defendant claims that the lower court improperly dismissed his petition for a writ of coram nobis. The writ was sought on the ground that after the time for moving for a new trial had expired, defendant had discovered a new witness who could corroborate his alibi defense. Jane Elsmore, the grandmother of Jim Hindley would allegedly testify that she observed defendant and Mitch Powell at her house on the night the crime was committed.

This Court has recognized the validity and usefulness of the writ of coram nobis in extraordinary circumstances where other means are not available to inquire into and/or remedy an injustice.[8] The record in this case reflects no such extraordinary circumstances where other means are unavailable to determine facts contended for, or sought, in support of the defendant's defense here. His petition reveals only a fragment of proposed evidence that at best would be cumulative and speculative in nature, and not likely to have changed the

verdict had it been available at trial. Furthermore, this highly extraordinary writ appears to have been employed for less than a germane purpose, when counsel for the defendant concedes in his brief that it was being used abortively and not in consonance with its avowed purpose, when he said that "Appellant attempted to make the motion [for a new trial, whose time for filing had elapsed] *through the vehicle of a writ for Coram Nobis.*" (Emphasis added.)

 What we have said above with respect to the function of this extraordinary writ, has the built-in and necessary implication that a genuine, clear, persuasive and supported reason for its employment must be presented that appeals to the discretion of the court, that in turn can demand the exercise of that discretion only one way, i. e., in favor of its prayer for relief. In effect, it is to suggest that the reasons favoring relief are so overwhelming, that a denial of the writ would be nothing less than arbitrary and capricious. The petition in this case is not fashioned to adjust itself to such a strict and salutary formula, since its content falls far short of such persuasion.

At trial, defendant served a "Notice of Alibi Defense," in which the names of witnesses to be used in support of such defense were listed. Those persons were defendant's mother, father, brother, Mitch Powell and Jim Hindley. Defendant's family members and Powell and all testified at trial with astonishing precision that the defendant left the Wilson home at 9:20 p. m. exactly (which had only a cumulative and speculative suggestion that defendant could not have been identified earlier than and could not have committed a robbery at about 10:00 p. m., at a service station about

---

6. The word "drawing" is somewhat of a misnomer. The composite kit used by law enforcement officials in obtaining a description of an individual allegedly involved in criminal activity consists of numerous transparent sheets with variations in physical characteristics. With police assistance and from his own memory, Harper assembled an approximate picture of his assailant by creating a composite overlay of the individual he was trying to describe.

When completed, several photocopies of the composite picture were made and the components were disassembled for use in other cases.

7. See U.C.A., 1953, 77–42–1.

8. *State v. Mitchell,* Utah, 569 P.2d 1117 (1977); *Sullivan v. Turner,* 22 Utah 2d 85, 448 P.2d 907 (1968); *Neal v. Beckstead,* 3 Utah 2d 403, 285 P.2d 129 (1955).

three blocks and two minutes distant.) Whether as a matter of coincidence or not, one of the proposed witnesses, Jim Hindley, was the grandson of the "newly discovered" witness, Jane Elsmore, both of whom had the same address. It is further a matter of speculation as to the substance and truth of the affidavit of Mrs. Elsmore. The inference is that her testimony would substitute for the testimony her grandson, Jim Hindley, *might* have given,—but who was not called as a witness, and whose absence was not explained. There was no offering of any proof to show that any diligence was ever indulged in trying to locate Hindley, who might have testified, and certainly could have divulged the presence of his grandmother on the night of the robbery, and her whereabouts *before* the trial.

The *only* documentation of any alleged necessary clear, strong and persuasive evidence to support the writ and condemn the trial court, was a recitation by Mrs. Elsmore that she was at her home on the night of the robbery and that the defendant, her grandson, and another person were on her back porch at "approximately 10:00 p. m., when they left." About three minutes later she allegedly saw and heard a police car, with a siren operating, going toward the service station about six blocks up the street. The frailty of this affidavit, is revealed by the unlikely statement of this lady in her affidavit "That after due diligence and reasonable inquiry it would have been impossible for Alfred Bennie Wilson to locate your affiant in Florida for purposes of testimony and affiant's testimony regarding the case was not known to the petitioner [defendant] until the case had gone to trial."

It becomes obvious to this Court that the writ of coram nobis interjected in this case as a substitute for a motion for a new trial, and sought after while an appeal was pending, is not a proper use; but an abuse thereof, and does not merit consideration for reversal.

For the foregoing reasons, the conviction is affirmed, as is the trial court's order dismissing the petition for the writ of coram nobis.

CROCKETT, C. J., and MAUGHAN and WILKINS, JJ., concur.

STEWART, J., concurs in result.