474 P.2d 733

STATE of Utah, Plaintiff and Respondent,

v.

John Charles WILKS, Defendant and Appellant.

No. 12091.

Supreme Court of Utah.

Sept. 25, 1970.

1. Section 76–1–44, U.C.A.1953; State v. Ervin, 22 Utah 2d 216, 451 P.2d 372.

Thomas S. Taylor, of Christensen, Taylor & Moody, Provo, for appellant.

Vernon B. Romney, Atty. Gen., Lauren N. Beasley, David A. Goodwill, Asst. Attys. Gen., Salt Lake City, for respondent.

ELLETT, Justice.

The defendant was convicted by a jury verdict of the crime of assault with intent to commit murder, and he appeals therefrom. He claims the court erred in failing to direct the jury to find him not guilty.

He and his companion were stopped in a stolen automobile by a highway patrolman named Warren, who parked his car imme-

## 24

diately behind the stolen car. At about the same time a city police officer stopped his car immediately in front of defendant's car. The patrolman got out of his car, and as he approached the defendant's car, the companion handed the defendant a cocked single-action .22 caliber pistol. The defendant opened the door and turned toward the patrolman, and at that time somebody fired two shots, and the partolman fell to the ground with two bullet holes in his forehead. Neither of the two officers had drawn a gun, and we think the jury was correct in deciding that it was the defendant who shot the trooper.

█ The defendant also contends that it was error to permit the trooper to be brought into court in the presence of the jury. At that time the trooper was unable to walk and was brought into the court in a wheelchair.

The doctor who had operated on the trooper stated that the victim would not be able to remember anything which occurred at the time of the shooting, and the victim was not presented as a witness in the matter but only for the purpose of permitting the doctor to point out the situs of the two bullet holes in his forehead.

We do not see any error in this procedure. The defendant had pleaded not guilty, and it was necessary for the State to prove all elements of the crime beyond a reasonable doubt. The defendant testified that he never fired the pistol; that if it was discharged, it was accidental. The accuracy of marksmanship would be very material in a case like this. While the doctor had stated that the two wounds were only three fourths of an inch apart, that testimony might be discounted by the jury, since the operation was performed about a year prior to trial. By having the scars exhibited to the jury, the testimony given would be corroborated and the jury could see for themselves the accuracy of the shooting.

The defendant is not entitled to limit the State's case as he now tries to do. The prosecution could prove the matter by oral testimony and also by exhibiting the scars to the jury. The fact that the victim was in a wheelchair was due to the defendant's own acts and was not staged by the prosecution for the purpose of prejudicing the jury. There was no error in permitting the doctor to show the scars resulting from the bullets which were fired into the victim's forehead.

█ Complaint is also made because the doctor was permitted to say that in his opinion the bullets which entered the victim's head could not be larger than .32 caliber. Those bullets have not been removed from the victim's brain. However, the doctor stated that the holes in the skull were each about one quarter of an inch in diameter and that they could not have been

made by .357 caliber Magnum bullets. (Both officers had the latter type pistols.) The doctor said he was acquainted with the various types of calibered pistols and that he had treated many cases of gunshot wounds. The trial court initially has a discretion as to the allowance or rejection of evidence, and unless he abuses that discretion, he ought not be reversed. There was no error in permitting the doctor to testify as he did.

Complaint is also made because the defendant's proposed instructions were not given as requested. One proposed instruction told the jury that before they could find the defendant guilty, they must be convinced from the evidence and beyond a reasonable doubt that the elements of the crime (set out) had been established. The proposed instruction then stated that if the defendant accidentally or unintentionally fired or discharged the revolver without the specific intent either to assault or to kill the victim, he should be acquitted.

It is obvious that there could be no finding of the elements of the crime if the negatives existed. By refusing to give the reverse negative instruction as requested, the court did not prejudice the defendant in any manner. Defendant's counsel could present his theory of the case to the jury and could argue the accidental discharge and lack of intent to kill under the instructions which were actually given. If the jury had found either to be the fact, the defendant under the instructions would have been acquitted.

When instructions are given which clearly and positively state what must be proved before a conviction can be had and the jury told that they must acquit unless each and every element is established by the evidence and beyond a reasonable doubt, it is not necessary to give another instruction in negative form. If, for instance, the jury believed beyond a reasonable doubt that the defendant intentionally fired the shots, why should the court tell them then to consider whether the pistol was accidentally discharged and to acquit if such was the case? The jury had already been told to acquit unless they found the shots were intentionally fired.

We find no error in the record. The defendant had a fair trial before an impartial jury and was convicted on evidence which amply supported the verdict rendered. The verdict and judgment are affirmed.

CROCKETT, C. J., and CALLISTER, TUCKETT and HENRIOD, JJ., concur.