The STATE of Utah, Plaintiff and Respondent,

v.

Lonnie Ferris LAWSON, Defendant and Appellant.

No. 19106.

Supreme Court of Utah.

Aug. 27, 1984.

Sumner J. Hatch, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Roger Blaylock, Asst. County Atty., Ted Cannon, County Atty., Salt Lake City, for plaintiff and respondent.

TIMOTHY R. HANSON, District Judge:

Appellant appeals a jury conviction of criminal homicide and driving under the influence of alcohol causing bodily injury. Appellant asserts the following errors at trial: (1) certain instructions to the jury read together confused the jury and otherwise prejudiced the rights of appellant; (2) the results of the blood alcohol test performed upon appellant were improperly received into evidence and submitted to the jury; and (3) there was no evidence that appellant was driving the automobile involved in the collision that resulted in the death and personal injury. Each of appellant's claims of error are treated in the order raised.

The jury had before it the following admissible and substantial facts, which are reviewed in favor of the verdict, as is customary. On August 8, 1982, Kelly Fehler was a passenger in a vehicle driven by Clinton Hepner. Hepner was traveling south on Interstate 15 toward Sandy City and was forced to exit the freeway at 3300 South when his automobile malfunctioned and stalled. Hepner signaled, pulled into the emergency lane on the right side of the exit off the travel lanes, and brought his automobile to a stop. He testified that his headlights were off, but the emergency flashers had been activated for five or ten seconds prior to his coming to a stop. While stopped in the emergency lane, Hepner's automobile was struck from the rear by a Blazer, allegedly operated by appellant. As a result of the accident, Ms. Fehler suffered massive head injuries and died. Mr. Hepner sustained nonfatal injuries.

Prior to the accident, while driving south on the freeway at approximately 2000 South, witness Peterson observed the Blazer that was subsequently involved in the accident pass his automobile. Peterson was traveling approximately 50 miles per hour. Peterson followed the Blazer until it exited at the 3300 South exit. He then saw a cloud of dust and observed the Blazer roll

after colliding with Hepner's automobile and finally come to rest upside down. Peterson stopped his car and walked to the scene of the accident. He looked into the Blazer, saw the driver, and watched as the driver crawled out of the Blazer. Other than the person crawling out of the Blazer, Peterson did not see any other person in the area. Witness Bringhurst testified that he saw a male individual lying on the roof inside of the Blazer after it came to rest following the collision. Bringhurst testified that he detected the odor of alcohol and subsequently observed the male individual trying to exit the Blazer. He testified that he did not see anyone else inside the Blazer. Other evidence produced included testimony of a Salt Lake City police officer, who arrived on the scene almost immediately following the accident, that no one was found thrown from the Blazer. Witness Peterson testified that the occupant of the Blazer was standing at the scene of the collision with the investigating officers.

During the trial, the investigating officer, Utah Highway Patrol Trooper Kalma, testified concerning physical evidence on the roadway that was used by accident reconstruction specialist Knight to reach the conclusion that from the photographs and the gouges on the roadway appellant struck the Hepner automobile while it was parked in the emergency lane.

Another Highway Patrol officer, Belka, testified that he arrived at the accident scene at approximately midnight and talked with appellant, asking for identification. Trooper Belka observed appellant retrieve his wallet, containing his driver's license, from inside the overturned Blazer. Belka testified that appellant was staggering, had slurred speech, was disoriented, and smelled of alcohol. According to Belka, appellant was identified as the driver of the

Blazer by witnesses at the scene of the accident.

Trooper Belka transported appellant to St. Mark's Hospital, where a blood sample was drawn and subsequently tested by toxicologist Stonebraker for the Utah State Toxicology Department. Stonebraker testified regarding the method used to determine appellant's blood alcohol level from the sample taken. The results of the tests varied from .141 to .151. Both figures are above Utah's statutory standard raising the presumption of intoxication.

Also called by the State was Dr. Brian Finkel, a toxicologist at the University of Utah Medical Center. Finkel testified as to the effects that might be expected from various blood alcohol levels and stated that driving impairments encountered by an operator of a motor vehicle at blood alcohol levels less than .141 are substantial. Upon review of the manner in which toxicologist Stonebraker had performed the tests, as well as the variance between the two test results, Finkel stated that he would personally have run additional tests on the blood samples. Finkel did not testify, however, that Stonebraker's tests were invalid.

## JURY INSTRUCTIONS

■ Appellant asserts that the jury would have necessarily been confused in reading Instructions No. 18 and No. 20 together, which would have required them not to consider the court's instruction on proximate cause. In determining whether the jury was properly instructed so as to avoid confusion and fairly present the issues raised by both the State and appellant, a reviewing court must consider all of the jury instructions read together in light of the total evidence before the jury. *State v. Ruben*, Utah, 663 P.2d 445 (1983).

The trial court instructed the jury in Instruction No. 18 [1] that it was no defense

1. Instruction No. 18 reads:
   In the crimes of Automobile Homicide and Driving Under the Influence of Alcohol causing bodily Injury, it is no defense that any victim may also have been negligent in one or more respects and thereby also contributed to

cause the accident. The test to be applied is whether you find from all facts that the defendant was negligent, and that said negligence caused the death of Kelly Fehler and proximately caused injuries to Clinton Hepner.

to the crime of automobile homicide or driving under the influence of alcohol causing bodily injury that the victim may have been negligent and contributed to the accident. The court went on in Instruction No. 18 to advise the jury that the appropriate test to determine whether the defendant (appellant here) was guilty of the crimes charged was whether the jury could determine from all the facts available to it that the defendant was negligent and that such negligence proximately caused the death of Ms. Fehler and the injuries to Hepner.

The trial court then went on to give Instruction No. 19,[2] which in substance indicated that no inference may arise from the fact that an unfortunate and fatal accident occurred, and then gave appellant's requested instruction dealing with proximate cause. The trial court's Instruction No. 20[3] set forth the standard definition of proximate cause. The trial court's next instruction, No. 21,[4] advised the jury, following the definition of proximate cause in Instruction No. 20 of the concept of independent intervening cause, and advised the jury of its effect in the required finding of proximate cause. Instruction No. 21 provided the jury with a definition of intervening cause as referred to in Instruction No. 20.

■ Appellant suggests that a reading of all the instructions would cause the jury to read Instructions No. 18 and No. 20 so as to disregard the court's instruction on

proximate cause. A fair review of the instructions does not lead this Court to the conclusion that said instructions would give rise to any confusion in the minds of the jurors. To the contrary, the instructions as given would be necessary for the jury to have a full understanding of the concept of proximate cause. The instructions, when read as a whole, set forth the general test to be applied by the jury, advised the jury that no inference regarding negligence or proximate cause may arise from the fact of the accident itself, defined proximate cause, and finally advised the jury of the concept of intervening cause. The instructions were presented in a logical sequence and adequately set forth the state of the law as it applies to this case. Appellant's contention of confusion in the instructions is without merit.

## BLOOD TEST RESULTS

■ Appellant contends that allowing the results of the blood tests into evidence and submitting them to the jury constitute error justifying reversal of his conviction. The Court cannot agree with that assertion. Toxicologist Stonebraker testified that the blood alcohol test he performed upon the sample taken from appellant was within the accepted laboratory standards. Toxicologist Finkel testified that in his opinion a rerun of the test was indicated because of the variation between the test results. Finkel did not testify that Stonebraker's tests were invalid, and accordingly

2. Instruction No. 19 reads:

The mere fact that an unfortunate and fatal accident happened in which the defendant was involved, considered alone, does not prove and does not support an inference that the defendant is guilty of the crime[s] here charged. In determining the issues in this case, you must consider all the facts immediately preceding and surrounding the occurrence in question and not be moved to a conclusion solely by the fact of an unfortunate result.

3. Instruction No. 20 reads:

The proximate cause of an injury is that cause which, in natural and continuous sequence, (unbroken by an efficient intervening cause), produces the injury, and without which the result would not have occurred. It

is the efficient cause—the one that necessarily sets in operation the factors that accomplish the injury.

4. Instruction No. 21 reads:

If you find that the defendant was negligent but that the proximate cause of the alleged harm was an independent intervening act of a person not a party to this case that the defendant, in the exercise of ordinary care, could not reasonably have anticipated as likely to happen, the defendant's original negligence is superseded by the intervening act and is not the proximate cause of the alleged harm. However, if in the exercise of ordinary care, the defendant should reasonably have anticipated the intervening act it does not supersede his original negligence or break the chain of proximate causation.

the testimony of both Stonebraker and Finkel was admissible as evidence for the jury to weigh and consider in determining whether appellant was under the influence of alcohol at the time of the accident. Appellant's claims go to the weight to be given Stonebraker's testimony and the test results, as opposed to admissibility.

In addition to the blood alcohol test, there was sufficient evidence upon which the jury could find that appellant operated the vehicle under the influence of alcohol at the time and place of the collision. The observations of trained investigating officers who saw appellant demonstrate outward appearances of intoxication, an odor of alcohol about his person, and the manner in which the accident occurred all support the finding of the jury that appellant was under the influence of alcohol at the time of the collision.

### SUFFICIENCY OF THE EVIDENCE

Appellant's final contention is that there was insufficient evidence presented to the jury to allow it to determine that appellant was the driver of the vehicle that collided with the automobile occupied by Hepner and Fehler. There was no evidence produced at trial that anyone actually observed appellant driving the Blazer prior to the impact. There is evidence from various witnesses placing appellant in the overturned Blazer immediately after the impact. It is appellant's contention that there may have been other people in the Blazer who could have been operating the vehicle, but the record is devoid of any evidence that would support such a proposition. A search of the area revealed no other persons involved in the collision other than appellant and the two victims. There is substantial circumstantial evidence even if direct evidence is lacking to support the jury's conclusion, and this Court cannot say that it was unreasonable for the jury to find that appellant was the operator of the Blazer involved in the collision.

The conviction and judgment are affirmed.

HALL, C.J., and HOWE and DURHAM, JJ., concur.

STEWART, J., does not participate herein; TIMOTHY R. HANSON, District Judge, sat.

ZIMMERMAN, J., does not participate herein.