STATE of Utah, Plaintiff and Appellee,

v.

Richard S. JOHNSON, Defendant and Appellant.

No. 870041.

Supreme Court of Utah.

May 19, 1989.

Ronald W. Perkins, Deirdre A. Gorman, Ogden, for defendant and appellant.

R. Paul Van Dam, Kimberly K. Hornak, Salt Lake City, for plaintiff and appellee.

HALL, Chief Justice:

Defendant was convicted of first degree murder in violation of Utah Code Ann. § 76–5–202 (Supp.1988) and was sentenced to life imprisonment. On appeal, defendant challenges the admissibility of evidence of criminal conspiracy, the denial of his motion to dismiss the aggravating circumstance of pecuniary gain, the propriety of the instructions to the jury, the sufficiency of the evidence to convict, and the propriety of a statement made by the prosecutor in closing argument to the jury.

The body of the victim, Piti Srisa–Ad, was found in Weber County on May 16, 1986. Police investigation resulted in the arrest of James Smith. Smith initially implicated himself, Brad Bromage, and Lloyd Averett in Srisa–Ad's death and identified Averett and Bromage as the persons directly responsible for the murder. Subsequently, Smith admitted, and so testified at trial, that he had acted alone in killing

Srisa–Ad, having been hired for that purpose by defendant.

In support of its theory of the case and over the objection of defendant on grounds of hearsay and relevance, the State was permitted to introduce evidence of a criminal conspiracy to sell cocaine. Scott Taren, one of the co-conspirators, testified that in November 1985, he, defendant, defendant's brother (Randy Johnson), and Brook Evertsen met together at a hotel for the purpose of setting up a cocaine distribution business. Taren was to keep the records; Evertsen was to finance the business; the victim, Srisa–Ad, was to supply the cocaine; and defendant and Randy Johnson were to handle distribution and sales. Pursuant to this arrangement, Randy Johnson distributed cocaine for several months to various persons, including himself.

In January 1986, defendant purchased from Evertsen a $100,000 insurance policy on the victim's life, representing his insurable interest to be that of the victim's employer. Subsequently, the policy amount was increased to $200,000.

The victim became indebted to defendant in the amount of $30,000, that sum having been given to Srisa–Ad for the purchase of cocaine, which he subsequently failed to supply. Defendant became concerned that the victim intended to terminate his supply of cocaine. He also suspected that the victim had become a narcotics agent. Therefore, defendant offered Bromage $10,000, a quarter pound of cocaine, and employment in his business if Bromage would kill Srisa–Ad. He also offered Averett $6,000, a quarter pound of cocaine, and a Corvette automobile if Averett would kill Srisa–Ad. When neither Averett nor Bromage agreed to kill Srisa–Ad, defendant offered James Smith $3,000, a quarter pound of cocaine, a new house, a customized Corvette automobile, and a part of his business if Smith would commit the murder. This latter offer was coupled with defendant's threat to kill Smith's family if

Smith refused to kill Srisa–Ad by May 16, 1986.

On the night of May 15, 1986, Smith, Srisa–Ad, and others were smoking marijuana at a private dwelling. On the pretext that he knew where cocaine could be purchased, Smith enticed Srisa–Ad to accompany him in Smith's automobile to make the purchase. While stopped at a stop sign and while Srisa–Ad was looking away, Smith shot Srisa–Ad in the head and killed him. He then dumped the victim's body.

I

Defendant presents a twofold challenge to the admissibility of the evidence of a criminal conspiracy to sell drugs. He contends that the evidence was irrelevant and that it was inadmissible hearsay in the absence of independent evidence of a criminal conspiracy. We are not persuaded.

■ First, as to the hearsay issue, as was explained in *State v. Gray*,[1] Utah Rule of Evidence 801(d)(2)(E) defines out-of-court statements of a co-conspirator as nonhearsay if the statements are offered against a party to the conspiracy and if the statements were made during the course of and in furtherance of the conspiracy.[2] However, the criminal conspiracy and the defendant's participation therein need be established by independent proof and by a preponderance of the evidence.[3]

■ Evidence of a criminal conspiracy which consists of the testimony of witnesses who recount their own personal observations and experiences in relation thereto is of course admissible as the required independent proof of a conspiracy.[4] Also admissible are the defendant's own statements of his involvement in the conspiracy, as well as his actions relating thereto.[5]

■ In this case, there was substantial admissible evidence of a conspiracy to sell drugs. The testimony of several witnesses recounted their personal observations and

1. 717 P.2d 1313 (Utah 1986).

2. *Id.* at 1317–18.

3. *Id.* at 1318–19.

4. *Id.* at 1316.

5. *Id.* at 1319.

experiences pertaining to the drug-selling operation. Scott Taren, one of the co-conspirators, testified about the meeting during which he participated with defendant, Randy Johnson, and Evertsen in setting up the drug business. John Montoya testified about the deliveries of cocaine he received from defendant, Randy Johnson, Srisa–Ad, and Scott Taren. Randy Johnson testified that he and Srisa–Ad persuaded defendant to give them money to start the drug business and that defendant gave Randy Johnson $5,000 to buy cocaine. In addition, defendant himself testified about his involvement in the conspiracy to sell cocaine. Such evidence, together with the fact that in claiming prejudice, defendant does not contest on appeal the admission of any specific statements of an "out-of-court nature," [6] supports the determination that defendant's claim is without merit.

█ As to defendant's challenge to the evidence on the grounds of relevancy, we likewise conclude that the evidence of the drug-selling conspiracy was indeed relevant and therefore admissible as such to establish defendant's motive for murder. Srisa–Ad was the conspirator who had the necessary drug connection to supply the cocaine, his co-conspirators furnished him the money with which to purchase the same, and he became indebted to defendant for a large sum of money given to him for the purchase of cocaine, which he subsequently failed to deliver. Defendant suspected that Srisa–Ad intended to cut off the supply of cocaine to him and that Srisa–Ad might have become a narcotics agent. Defendant also purchased a double-indemnity insurance policy on the life of Srisa–Ad, which policy listed defendant as the beneficiary. Inasmuch as evidence of the conspiracy was relevant to support the above, defendant's claim is without merit.

## II

The information charged defendant with first degree murder in the manner following:

Said defendant intentionally or knowingly caused the death of Piti Srisa–Ad under the following circumstances:

(a) The defendant committed, or engaged or employed another person to commit the homicide pursuant to an agreement or contract for remuneration or the promise of remuneration for commission of the homicide. [Utah Code Ann. § 76–5–202(1)(g) (Supp.1988).]

(b) The homicide was committed for pecuniary or other personal gain. [Utah Code Ann. § 76–5–202(1)(f) (Supp.1988).]

At the close of the State's case, defendant moved to dismiss the allegation that the homicide was committed under subsection (b) above. As the basis for his motion, defendant asserted that the State had not made a showing that he had in fact intentionally or knowingly caused the death of Srisa–Ad for pecuniary or other personal gain. The trial court denied the motion, stating, "The evidence at this point would support a finding that the defendant hired somebody to cause the death of the victim for pecuniary gain, being to collect the insurance."

█ On appeal, defendant claims that the court erred in not dismissing the charged "personal gain" circumstance since his *mens rea* in committing the crime was different from that of James Smith and because a determination of guilt based thereon could only be accomplished under an accomplice theory, upon which theory the State never requested the jury to be instructed. We disagree.

First, as we have repeatedly stated, "A general rule of appellate review in criminal cases in Utah is that a contemporaneous objection or some form of *specific* preservation of claims of error must be made a part of the trial court record before an appellate court will review such claim on appeal." [7] Importantly, the grounds for the objection must be distinctly and specifically stated.[8] Here, although defendant

---

6. *Id.* at 1316.

7. *State v. Tillman,* 750 P.2d 546, 551 (Utah 1987) (footnote omitted; emphasis added).

8. *See id.; see also Hansen v. Stewart,* 761 P.2d 14, 16 (Utah 1988) (civil case).

made a general motion to the trial court to dismiss the "personal gain" circumstance charged, the grounds he now raises on appeal were not specifically or distinctly stated to the court below. Thus, under the standard noted, they were not preserved for our review.

■ Second, we likewise need not address defendant's claims of error in this regard since the jury unanimously found that defendant was guilty of Srisa–Ad's murder under an additional charged circumstance which defendant has not challenged on appeal.

Indeed, in addition to finding defendant guilty of first degree murder committed for defendant's pecuniary or other personal gain,[9] the jury based its finding of guilt on a determination that "defendant engaged or employed another person to commit the homicide pursuant to an agreement or contract for remuneration or the promise of remuneration for commission of the homicide."[10] The record supports this determination and upholds defendant's conviction on appeal.

■ Finally, under Utah Code Ann. § 76–5–202 (Supp.1988), criminal homicide constitutes murder in the first degree if the actor intentionally or knowingly causes the death of another for the defendant's pecuniary or other personal gain. Utah Code Ann. § 76–2–103 (1978) states in pertinent part that a person engages in conduct:

(1) Intentionally, or with intent or willfully with respect to the nature of his conduct or to a result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result.

(2) Knowingly, or with knowledge, with respect to his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or the existing circumstances. A person acts knowingly, or with knowledge, with re-

spect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.[11]

In view of defendant's conduct and the circumstances surrounding the same, the jury could determine beyond a reasonable doubt that it was defendant's conscious objective or desire to cause the victim's death and that he was also aware of the nature of his conduct and of the existing circumstances and that his conduct was reasonably certain to cause the end result.[12] In addition, under the facts the jury could reasonably determine that defendant caused the victim's death for his own pecuniary or personal gain.

In view of the above, we conclude that defendant's claim that the court erred in denying his motion to dismiss the "personal gain" circumstance is without merit.

### III

Defendant next cites as error the trial court's refusal to give his proposed supplemental reasonable doubt instruction. He also cites as error the use of an instruction on the lesser offense of second degree murder.

The court gave the jury two reasonable doubt instructions:

### INSTRUCTION NO. 11

Proof beyond a reasonable doubt is that degree of proof that satisfies the mind and convinces the understanding of those who are bound to act conscientiously upon it. It must arise from the evidence or lack of evidence in the case.

If, after an impartial consideration and comparison of all the evidence, you can honestly say that you are not satisfied of the defendant's guilt, you have a reasonable doubt; but if, after such impartial consideration and comparison of all the evidence, you can truthfully say that you

---

9. *See* Utah Code Ann. § 76–5–202(1)(f) (Supp. 1988).

10. *See* Utah Code Ann. § 76–5–202(1)(g) (Supp. 1988).

11. The jury instructions defined these terms in similar language.

12. *See generally State v. Simmons*, 759 P.2d 1152, 1156 (Utah 1988) (Hall, C.J., concurring and dissenting).

have an abiding conviction of the defendant's guilt such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt.

## INSTRUCTION NO. 12

The law does not require demonstration of that degree of proof which, excluding all possibility of error, produces absolute certainty, for such degree of proof is rarely possible. Only that degree of proof is necessary which convinces the mind and directs and satisfies the conscience of those who are bound to act conscientiously upon it.

Defendant asserts that because instruction No. 11 explained the concept of reasonable doubt in the positive as well as the negative and because instruction No. 12 explained the concept only in the positive, there was then a "two-to-one imbalance" prejudicial to defendant. Hence, defendant proposed the following supplemental instruction:

Reasonable doubt is defined as follows: It is not a mere possible doubt, because everything relating to human affairs, and depending on moral evidence is open to some possible or imaginary doubt. It is the state of the case which after the entire comparison and consideration of all of the evidence leaves the mind of the Jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge.

■ The trial judge did not express his reason for declining to give the proposed supplemental instruction. However, there are apparent reasons why the additional instruction was unnecessary. Defendant was not entitled to an instruction that was redundant or repetitive of the principles already enunciated in instructions 11 and 12.[13] In addition, the jury instructions are

to be considered as a whole,[14] and when instructions 11 and 12 are considered in light of all the others, including those which bear upon and require the presumption of innocence and proof of the elements of the crime beyond a reasonable doubt, it does not appear that the instructions were unfairly weighted against defendant. This Court has previously held:

When instructions are given which clearly and positively state what must be proved before a conviction can be had and the jury told that they must acquit unless each and every element is established by the evidence and beyond a reasonable doubt, it is not necessary to give another instruction in negative form.[15]

In any event, defendant does not contend that had his proposed instruction been given, the outcome of the trial would have been different, and indeed, nothing appears to indicate that the result would have been otherwise had the instruction been given.[16] And this Court performs a disservice in addressing, as my colleagues have chosen to do, an issue not specifically argued or briefed by the parties in this case.

■ In regard to the second degree murder instruction, it was given at the request of the State over defendant's objection that it had no application to the facts of the case. Defendant claims that he was prejudiced thereby because he was entitled to an acquittal if the jury were to find that he did not hire Smith to kill Srisa–Ad. Defendant makes this claim despite his inconsistent position at trial wherein he insisted upon and received a jury instruction on manslaughter as an included offense. In addition, even if the jury had found that the homicide was not committed for pecuniary or personal gain and that defendant did not hire Smith (pursuant to an agreement for remuneration) to kill Srisa–Ad, the jury could nevertheless have determined that

13. *State v. McCumber,* 622 P.2d 353, 359 (Utah 1980).

14. *State v. Lawson,* 688 P.2d 479, 481 (Utah 1984); *State v. Bingham,* 684 P.2d 43, 45 (Utah 1984).

15. *State v. Wilks,* 25 Utah 2d 22, 25, 474 P.2d 733, 735 (1970).

16. *See, e.g., Tillman,* 750 P.2d 546, 561 (Utah 1987) (question for review is whether absent alleged error, there is a reasonable likelihood of a more favorable result for the defendant).

given defendant's conduct and the circumstances surrounding the same, defendant intentionally or knowingly caused the victim's death under the definitions noted.

Moreover, even if we were to determine that the court erred in giving the second degree murder instruction, this Court has heretofore stated that "under ordinary factual situations where a jury finds the defendant guilty of a greater offense, the giving of an erroneous instruction on a lesser offense is not deemed prejudicial." [17] Thus, defendant's claim in this regard is without merit.

## IV

Defendant next challenges the sufficiency of the evidence. In the face of such a challenge, the standard of review is that the evidence and the reasonable inferences which may be drawn therefrom must be viewed in the light most favorable to the jury verdict. A jury conviction is reversed for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted. [18] Application of this standard in the instant case prompts the conclusion that this point on appeal is without merit. Notwithstanding some inconsistent and disputed evidence, the entire evidence viewed in a light most favorable to the verdict establishes the elements of the offense charged and is sufficient to support defendant's conviction. [19]

## V

Defendant's final contention of error is that in delivering his closing argument, the prosecutor misstated the evidence pertaining to the immunity granted to a witness and thus prejudicially enhanced the witness's credibility. Defendant correctly concedes that he failed to object to the alleged misstatement at trial and thus the point cannot be raised for the first time on appeal. [20] Indeed, to hold otherwise would foster invited error. [21]

Nevertheless, even if we were to consider defendant's claim, a prosecutor's actions and remarks only constitute misconduct meriting reversal if they call to the jurors' attention matters they would not be justified in considering while determining their verdict and, under the circumstances of the case, the alleged errors are so substantial and prejudicial that there is a reasonable likelihood that in their absence, there would have been a more favorable result for the defendant. [22] Application of these principles herein convinces us that reversal is not warranted.

We have reviewed defendant's other claims on appeal and find them to be without merit. The conviction and judgment of the trial court are affirmed.

HOWE, Associate C.J., concurs.

STEWART, Justice (concurring in the result):

I concur in the majority opinion, but write separately because the opinion can be read to support a view of the law that I think is not correct. The trial court gave the jury instructions on the critical beyond-a-reasonable-doubt standard that I submit are incorrect and perpetuate erroneous ideas about the meaning of the term "beyond a reasonable doubt" that is often insinuated into jury instructions.

The trial court instructed the jury as follows:

### INSTRUCTION NO. 11

Proof beyond a reasonable doubt is that degree of proof that satisfies the

17. *State v. Valdez,* 30 Utah 2d 54, 58, 513 P.2d 422, 424 (1973); *see also State v. DeAlo,* 748 P.2d 194, 198 (Utah Ct.App.1987) (erroneous instruction was superfluous and not the basis of the jury's verdict and was thus harmless).

18. *State v. Cobb,* 774 P.2d 1123, 1128 (Utah 1989); *Simmons,* 759 P.2d at 1158 (Hall, C.J., concurring and dissenting).

19. *State v. Marcum,* 750 P.2d 599 at 601 (Utah 1988).

20. *Tillman,* 750 P.2d at 551; Utah R.Evid. 103(a)(1).

21. 750 P.2d at 560–61.

22. *Id.* at 555.

mind and convinces the understanding of those who are bound to act conscientiously upon it. It must arise from the evidence or lack of evidence in the case.

If, after an impartial consideration and comparison of all the evidence, you can honestly say that you are not satisfied of the defendant's guilt, you have a reasonable doubt; but if, after such impartial consideration and comparison of all the evidence, you can truthfully say that you have an abiding conviction of the defendant's guilt such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt.

### INSTRUCTION NO. 12

The law does not require demonstration of that degree of proof which, excluding all possibility of error, produces absolute certainty, for such degree of proof is rarely possible. Only that degree of proof is necessary which convinces the mind and directs and satisfies the conscience of those who are bound to act conscientiously upon it.

In my view, each of the instructions misstates the law, to one degree or another. Each allows the jury to convict on something less than evidence proving guilt beyond a reasonable doubt. The lead opinion points out that no valid objection was taken to the instructions. I agree. However, the defendant did request an instruction which stated that reasonable doubt "is not a mere possible doubt.... It is the state of the case which after the entire comparison and consideration of all of the evidence leaves the mind[s] of the Jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge." Although the defendant's instruction also leaves something to be desired, it comes closer to conveying the essential meaning of the legal concept of proof beyond a reasonable doubt than does the trial court's instruction. Even though the instructions given in this case do not rise to the level of reversible error, we should not, in my view, leave an impression that the instructions were correct.

The instructions given in this case are not precisely the same as the instructions given in *State v. Ireland,* 773 P.2d 1375 (Utah 1989), but the point I made in that case is applicable here also. There, I stated in a dissenting opinion:

A number of courts have criticized the definition of the reasonable doubt standard expressed in terms of making important or "weighty" decisions in the jurors' own lives. An instruction that does that tends to diminish and trivialize the constitutionally required burden-of-proof standard. *See Dunn v. Perrin,* 570 F.2d 21 (1st Cir.), *cert. denied,* 437 U.S. 910, 98 S.Ct. 3102, 57 L.Ed.2d 1141 (1978). In *Scurry [v. U.S.],* 347 F.2d [468] at 470 [D.C.Cir.1965] Judge Skelly Wright stated:

A prudent person called upon to act in an important business or family matter would certainly gravely weigh the often neatly balanced considerations and risks tending in both directions. But, in making and acting on a judgment after so doing, such a person would not necessarily be convinced beyond a reasonable doubt that he made the right judgment. Human experience, unfortunately, is to the contrary.

The Supreme Judicial Court of Massachusetts in *Commonwealth v. Ferreira,* 373 Mass. 116, 130, 364 N.E.2d 1264, 1273 (1977), stated:

The degree of certainty required to convict is unique to the criminal law. We do not think that people customarily make private decisions according to this standard nor may it even be possible to do so. Indeed, we suspect that were this standard mandatory in private affairs the result would be massive inertia. Individuals may often have the luxury of undoing private mistakes; a verdict of guilty is frequently irrevocable. (Footnotes omitted.)

Finally, I submit that it is inappropriate to instruct that a reasonable doubt is not merely a possibility, as the instruction in this case does. Possibilities may or may not create doubt. Depending on

the circumstances, a possibility may constitute a reasonable doubt. Whether a possibility is sufficient to create a reasonable doubt depends upon the likelihood of the possibility. Certainly a fanciful or wholly speculative possibility ought not to defeat proof beyond a reasonable doubt. But the instruction does not make the point clear.

An instruction that a reasonable doubt must be a "real, substantial doubt, and not one that is merely possible or imaginary" has been held to be erroneous because, in practical effect, it tends to diminish the prosecution's burden of proof by implying that the prosecution need not obviate a real or substantial doubt. *See, e.g., Dunn v. Perrin; United States v. Flannery,* 451 F.2d 880, 882–83 (1st Cir.1971).

In my view, the trial court's instruction was clearly erroneous and ought to be so declared.

*Ireland* at 1378 (footnote omitted).

For the foregoing reasons, I believe the instructions in this case were incorrect.

DURHAM and ZIMMERMAN, JJ., concur in the concurring opinion of STEWART, J.

ZIMMERMAN, Justice (concurring in the result):

I agree with some of defendant's claims of error, and I also agree with Justice Stewart's separate opinion. However, in light of the evidence properly admitted and the jury's separate verdict of guilty of first degree murder based on the determination that defendant had "engaged or employed another" to commit the homicide, I conclude that these errors were harmless. *See, e.g., State v. Knight,* 734 P.2d 913, 919–20 (Utah 1987). For that reason, I agree that the conviction should be affirmed.

DURHAM, J., concurs in the concurring opinion of ZIMMERMAN, J.