ElRoy TILLMAN, Plaintiff and Appellant,

v.

Gerald R. COOK, Warden, Utah State Prison, Defendant and Appellee.

No. 890322.

Supreme Court of Utah.

March 31, 1993.

Rehearing Denied June 25, 1993.

R. Paul Van Dam, Atty. Gen., Sandra L. Sjogren, Asst. Atty. Gen., Salt Lake City, for defendant and appellee.

Gilbert D. Atahy, Loni F. Deland, Andrew A. Valdez, Ronald J. Yengich, Salt Lake City, for plaintiff and appellant.

HALL, Chief Justice:

A jury convicted ElRoy Tillman of capital homicide and sentenced him to death. This court affirmed the conviction and sentence on direct appeal.[1] Thereafter, Tillman filed a petition for a writ of habeas corpus in the third district court, challenging both his conviction and his sentence. The trial court addressed the issues on the merits and denied the petition, holding that no

---

1. *State v. Tillman,* 750 P.2d 546 (Utah 1987).

valid claim for relief was asserted. We affirm.

Tillman contends that the trial court erred in concluding that (1) the prosecutor did not make improper statements during closing argument at trial; (2) the information was not improperly amended after the preliminary hearing to include additional aggravating circumstances of capital homicide; (3) Tillman's constitutional right to a unanimous jury verdict on the charges against him was not violated by the instructions the trial court gave; (4) the aggravating circumstances of capital homicide, particularly the aggravated arson circumstance, were supported by sufficient evidence; (5) Utah capital homicide statute section 76-5-202(1)(d) was constitutional; and (6) Tillman's right to the effective assistance of counsel was not violated by the performance of his counsel during the trial and on direct appeal.

## I. FACTS

Tillman was convicted of killing his former girlfriend's new boyfriend, Mark Schoenfeld, in Schoenfeld's apartment on the night of May 25, 1982. As Schoenfeld slept, Tillman struck him on the head several times with the blunt end of an ax. Tillman then set fire to Schoenfeld's bed. The primary cause of death was carbon monoxide poisoning caused by the burning mattress, but the evidence indicated that the blows to the head would have independently caused Schoenfeld's death. Carla Sagers, Tillman's girlfriend at the time of the murder, was with Tillman in Schoenfeld's apartment that night. She received immunity in exchange for her testimony against Tillman. Tillman was convicted of first degree murder and sentenced to

death. On direct appeal, this court affirmed the conviction and sentence.[2]

## II. STANDARD OF REVIEW

■ On appeal from a denial of a petition for a writ of habeas corpus, we accord no deference to the trial court's conclusions of law, but instead review them for correctness.[3]

## III. PROSECUTORIAL MISCONDUCT

■ Tillman asserts that a comment made by the prosecutor during closing argument in the penalty phase of the trial was prejudicial and inflammatory. The prosecutor stated, "(Tillman) bludgeoned (Schoenfeld) to death with an ax and then to further disfigure him, set fire to him while he was still breathing." Tillman contends that the prosecutor's assertion that the fire was intended to disfigure the victim was unsupported by the evidence and that it raised an aggravating circumstance of the first degree murder statute, subsection (q), that had not been charged.[4]

On direct appeal, this court addressed the issue of whether Tillman was denied a fair trial due to prosecutorial misconduct because of statements made by the prosecutor during closing argument in both the guilt and penalty phases.[5] Although Tillman's present claim implicates different prosecutorial statements, it is based on the same ground for relief. We therefore reject the argument as having been previously adjudicated.

## IV. AMENDMENT OF THE INFORMATION

■ Tillman contends for the first time that an amendment of the information pri-

---

2. Id.

3. *Fernandez v. Cook,* 783 P.2d 547, 549 (Utah 1989); *State v. Mitchell,* 779 P.2d 1116, 1118 (Utah 1989).

4. Utah Code Ann. § 76-5-202(1) provides in pertinent part:
(1) Criminal homicide constitutes murder in the first degree if the actor intentionally or knowingly causes the death of another under any of the following circumstances:
. . . .

(q) The homicide was committed in an especially heinous, atrocious, cruel, or exceptionally depraved manner, any of which must be demonstrated by physical torture, serious physical abuse, or serious bodily injury of the victim before death.
Subsection (1) of this statute was amended in 1991 to replace "murder in the first degree" with "aggravated murder." We quote from the statute in place when the murder was committed.

5. *Tillman,* 750 P.2d at 553-57.

or to trial resulted in an unfair conviction. Tillman was initially charged with first degree murder performed during the commission or attempted commission of burglary or aggravated burglary. At the conclusion of the preliminary hearing and before Tillman was bound over to the district court, the prosecutor moved to amend the information to conform with the evidence adduced at the preliminary hearing and to charge, in addition to the initial aggravating circumstances, that the murder took place during the commission or attempted commission of arson or aggravated arson. At that time, Tillman's attorney stated that he had no objection to the amendment. The circuit court judge granted the motion and ordered Tillman bound over to the district court on the amended information. No issue was raised on direct appeal as to the lawfulness of the amended information.

Tillman now asserts that the amendment was erroneous because it broadened the elements of the offense charged. He contends that the amendment violated due process by depriving him of an adequate opportunity "to prepare and defend as to each element, fact or circumstance." Although we could decline to address the issue, given counsel's agreement to the amendment at the preliminary hearing and, more importantly, counsel's failure to raise the issue on direct appeal, we will nevertheless exercise our discretion to address the issue on the merits.

Utah Rule of Criminal Procedure 4(d) provides that an information may be amended as long as the amendment does not charge an additional or different offense or prejudice the defendant:

> The court may permit an indictment or information to be amended at any time before verdict if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced. After verdict, an indictment or information may be amended so as to state the offense with such particularity as to bar a subsequent prosecution for the same offense upon the same set of facts.[6]

Whether an amendment charges an additional or different offense turns on whether different elements are required to prove the offense charged in the amended information or whether the offense charged in the amended information increased the potential punishment from that originally charged.[7]

On direct appeal in this case, we held that the aggravating circumstances are elements of a capital murder offense and must be proved beyond a reasonable doubt.[8] The addition of aggravating circumstances in the first degree murder charge meant that additional variations of capital homicide were alleged. It is arguable, therefore, that additional offenses were charged.

Nevertheless, Tillman has shown no prejudice because of the amendment.[9] He was

---

6. Utah R.Crim.P. 4(d) (formerly codified as Utah Code Ann. § 77–35–4(d)).

7. See, e.g., Bell v. State, 296 Ark. 458, 757 S.W.2d 937, 942 (1988); State v. Sharpe, 304 N.W.2d 220, 222–23 (Iowa), cert. denied, 454 U.S. 834, 102 S.Ct. 134, 70 L.Ed.2d 113 (1981).

8. Tillman, 750 P.2d at 578–80 (Stewart, Assoc. C.J., concurring and concurring in the result); id. at 585–88 (Durham, J., concurring and dissenting); id. at 591 (Zimmerman, J., concurring and dissenting).

9. Tillman cites cases which purportedly stand for the proposition that amendments made to charging documents at critical stages of the proceedings are prejudicial per se and reversible. However, the cases are United States Courts of Appeals cases and, with one exception, involve indictments rather than informations. See Cola v. Reardon, 787 F.2d 681, 700–01 (1st Cir.), cert. denied, 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986); United States v. Mosley, 786 F.2d 1330, 1335 (7th Cir.), cert. denied, 476 U.S. 1184, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986); United States v. Castro, 776 F.2d 1118, 1121–22 (3d Cir.1985), cert. denied, 475 U.S. 1029, 106 S.Ct. 1233, 89 L.Ed.2d 342 (1986); United States v. Parkhill, 775 F.2d 612, 615 (5th Cir.1985); United States v. Hayes, 775 F.2d 1279, 1282 (4th Cir.1985). Amendments to indictments trigger different rules than amendments to informations. Compare 1 Charles A. Wright Federal Practice and Procedure § 127, at 415–17 (1982) (amendment of indictment) with id. § 128, at 430–31 (amendment of information). The one case cited by Tillman that involves a state information is inapplicable because there, the defendant was unable to determine from the information what the nature of the charge was. See

bound over after the information was amended; therefore, the circuit court found probable cause in the evidence to support it. Moreover, the information was amended on August 18, 1982, and the trial did not begin until January 4, 1983. Thus, Tillman's attorneys had more than three months after the amendment to prepare a defense to the additional aggravating circumstances alleged.[10] In any event, aggravating circumstances added to the information at the preliminary hearing did not expose Tillman to a greater punishment. In sum, the amendment resulted in no prejudice to Tillman's defense and, considering all events, did not result in a fundamentally unfair trial.

## V. JURY UNANIMITY

Tillman argues that the trial court erred in failing to require the jury to agree unanimously on which of the aggravating circumstances were proved beyond a reasonable doubt. The capital homicide charge was based on allegations of one or more of the four aggravating circumstances, i.e., burglary, aggravated burglary, arson, and aggravated arson.

 Federal constitutional law does not require unanimity in state cases with respect to a particular aggravating circumstance to uphold a state's capital offense conviction.[11] Notwithstanding federal law, the Utah Constitution does require jury unanimity on all elements of a crime.

On direct appeal, a majority of this court held that jurors are constitutionally required to agree unanimously on each element of a criminal offense, including at least one aggravating circumstance in a capital offense.[12] This holding was based on the conclusion that aggravating circumstances are distinct factual and legal elements of the crime of first degree murder.

Justice Stewart, in his concurring opinion, expressed the view that the jurors had been sufficiently instructed to act with the requisite unanimity.[13] That opinion, which formed a majority for the result affirming Tillman's conviction and sentence, stated in part:

> The jury was instructed that it had to find each element of the offense by proof beyond a reasonable doubt, and the instructions were pellucid that an aggravating circumstance was an element of the crime that had to be proved beyond a reasonable doubt.... [The instruction] did not reasonably lend itself to the interpretation that some jurors could find one aggravating circumstance or offense, while other jurors disagreed on the finding and found some other aggravating circumstance or offense.
>
> . . . .
>
> The clear impact of the last quoted paragraph of the instruction, together with the general unanimity instruction given to the jury, is that the jury as a group had to find unanimously at least one aggravating circumstance.[14]

*Kreck v. Spalding,* 721 F.2d 1229, 1232–33 (9th Cir.1983).

**10.** *See State v. Bell,* 785 P.2d 390, 395 (Utah 1989); *Bullock v. United States,* 265 F.2d 683, 692 (6th Cir.), *cert. denied,* 360 U.S. 909, 79 S.Ct. 1294, 3 L.Ed.2d 1260 (1959); *U.S.A.C. Transport Inc. v. United States,* 203 F.2d 878, 880 (10th Cir.), *cert. denied,* 345 U.S. 997, 73 S.Ct. 1139, 97 L.Ed. 1403 (1953); *State v. Scognamiglio,* 202 Conn. 18, 519 A.2d 607, 609–10 (1987); *State v. Schertz,* 330 N.W.2d 1, 2–3 (Iowa 1983).

**11.** Although *Johnson v. Louisiana,* 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), and *Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), agreed that the Sixth Amendment requires a unanimous verdict in

federal criminal cases, both cases held that the Sixth Amendment, as applied to the states through the Fourteenth Amendment under *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), does not impose a similar requirement on state criminal proceedings.

**12.** *Tillman,* 750 P.2d at 578–80 (Stewart, Assoc. C.J., concurring and concurring in the result); *id.* at 585–88 (Durham, J., concurring and dissenting); *id.* at 591 (Zimmerman, J., concurring and dissenting).

**13.** *Tillman,* 750 P.2d at 579–80 (Stewart, Assoc. C.J., concurring and concurring in the result).

**14.** *Id.*

Tillman argues that *Mills v. Maryland*,[15] which was decided after the opinion on his direct appeal was issued, requires reversal of his conviction based on the unanimity ground. *Mills*, however, is not dispositive of the issue presented. *Mills* dealt with jury unanimity in finding mitigating circumstances in the penalty phase of a capital case where the issues and determinations of law are different from those in the guilt phase.[16] In the instant case, by contrast, the issue is whether the jury instructions sufficiently informed the jury that it had to be unanimous with respect to each element of the crime for which it convicted.

Tillman argues that *Mills* requires this court, as a matter of law, to reverse his conviction if there is a possibility that a single juror could have applied the instruction erroneously. In *Mills*, four justices agreed that the imposed sentence was invalid because a reasonable juror could have construed the instructions from the verdict form as permitting an unconstitutional application of the law on imposing the death penalty.[17] Four justices, however, held that reasonable jurors would not have misunderstood the instructions.[18] Justice White, who provided the fifth vote for reversing the defendant's death sentence, wrote a brief concurring opinion, which provided in its entirety, "The issue in this case is how reasonable jurors would have understood and applied their instructions. That is the issue the Court's opinion addresses, and I am persuaded that the Court reaches the correct solution. Hence, I join the Court's opinion."[19]

Thus, a majority of the Court agreed that the appropriate test was whether reasonable jurors would have properly understood and applied the instructions, not, as Tillman asserts, whether there was a possibility that a single juror could have erroneously applied the instructions. In sum, *Mills* is not authority for a conclusion different from the one reached in this case on direct appeal.[20]

## VI. SUFFICIENCY OF THE EVIDENCE ON AGGRAVATING CIRCUMSTANCES

Tillman next argues that there was insufficient evidence to support the individual aggravating circumstances. Because no special verdicts were given that would indicate on which aggravating circumstance the jury based the conviction, there must be sufficient evidence to support the State's proof on each aggravating circumstance as individual elements of the crime

---

15. 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).

16. *Id.* at 369–70, 108 S.Ct. at 1862–63; *see also McKoy v. North Carolina*, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) (reversing defendant's death sentence on authority of *Mills* and holding North Carolina's capital sentencing scheme unconstitutional because it prevented jury from considering any mitigating factor that jury did not unanimously find in deciding whether to impose death penalty).

17. *Id.*, 486 U.S. at 394, 108 S.Ct. at 1875 (opinion of Blackmun, J., joined by Brennan, Marshall, and Stevens, JJ.).

18. *Id.* at 390, 108 S.Ct. at 1872 (Rehnquist, C.J., dissenting, joined by O'Connor, Scalia, and Kennedy, JJ.).

19. *Id.* at 389–90, 108 S.Ct. at 1872 (White, J., concurring).

In *McKoy v. North Carolina*, 494 U.S. at 444 n. 8, 110 S.Ct. at 1234 n. 8, the Supreme Court noted the division over this issue in *Mills:*

In *Mills*, the Court divided over the issue whether a reasonable juror could have interpreted the instructions in that case as allowing individual jurors to consider only mitigating circumstances that the jury unanimously found. *Compare [Mills*, 486 U.S. at 375–84, 108 S.Ct. at 1865–70], *with [id.* at 391–95, 108 S.Ct. at 1873–75 (Rehnquist, C.J., dissenting)]. Indeed, the dissent in *Mills* did not challenge the Court's holding that the instructions, if so interpreted, were unconstitutional.

20. Tillman also argues that three other decisions on unanimity issued after his direct appeal, *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), *Adamson v. Ricketts*, 865 F.2d 1011 (9th Cir.1988), *cert. denied*, 497 U.S. 1031, 110 S.Ct. 3287, 111 L.Ed.2d 795 (1990), and *State v. Tuttle*, 780 P.2d 1203 (Utah 1989), *cert. denied*, 494 U.S. 1018, 110 S.Ct. 1323, 108 L.Ed.2d 498 (1990), require reversal of his conviction and sentence. We have reviewed these cases and find that they do not sufficiently alter the analysis of the unanimity and merger issues employed on direct appeal to warrant reconsideration of those issues.

of first degree murder.[21] On direct appeal in this case, Justice Stewart provided the swing vote for affirmance of the conviction and sentence. In his concurring opinion, he noted:

Even if the principle of juror unanimity as to aggravating circumstances could have been violated under the instruction, the assumed error would clearly be harmless because there is no real dispute in this case that the defendant in fact committed arson, aggravated arson, burglary, and aggravated burglary. That evidence is not really contested.[22]

The lead opinion on direct appeal concluded that unanimity on a particular aggravating circumstance was not required and found that "the record contains ample evidence, both eyewitness testimony and physical evidence, to support a jury verdict that at the time of the commission of the homicide, defendant intentionally and knowingly caused the death of the victim under any one of the aggravating circumstances at issue."[23] Justice Howe joined only in the result of this portion of the opinion.[24]

■ The critical instruction the jury received provided that an essential element of the charge was "[t]hat at the time the homicide was committed, the defendant was engaged in the commission of, or attempting to commit burglary or aggravated burglary, and/or arson or aggravated arson." With respect to burglary and aggravated burglary, Tillman argues that the only possible mens rea component is intent to kill.[25] Allowing this, he claims, would make every indoor murder a capital offense and would grant juries unlimited discretion to impose the death penalty in violation of *State v. Wood*[26] and *Godfrey v. Georgia*.[27]

Tillman's argument is basically a reconfiguration of the merger issue already decided against him. On direct appeal, a majority of the court held that a burglary predicated on intent to kill does not merge with the crime of first degree murder.[28]

---

**21.** *See State v. Johnson,* 821 P.2d 1150, 1156–57 (Utah 1991).

**22.** *Tillman,* 750 P.2d at 580 n. 1 (Stewart, Assoc. C.J., concurring and concurring in the result).

**23.** *Id.* at 566.

**24.** *Id.* at 582 (Howe, J., concurring in the result).

**25.** Utah Code Ann. §§ 76–6–201, –202, and –203 define the relevant burglary offenses:

BURGLARY AND CRIMINAL TRESPASS
76–6–201 *Definitions.*
For purposes of this part:
(1) "Building," in addition to its ordinary meaning, means any watercraft, aircraft, trailer, sleeping car, or other structure or vehicle adapted for overnight accommodation of persons or for carrying on business therein and includes:
(a) Each separately secured or occupied portion of the structure or vehicle; and
(b) Each structure appurtenant to or connected with the structure or vehicle.
(2) "Dwelling" means a building which is usually occupied by a person lodging therein at night, whether or not a person is actually present.
(3) A person "enters or remains unlawfully" in or upon premises when the premises or any portion thereof at the time of the entry or remaining are not open to the public and when the actor is not otherwise licensed or privileged to enter or remain on the premises or such portion thereof.
(4) "Enter" means:
(a) Intrusion of any part of the body; or
(b) Intrusion of any physical object under control of the actor.
76–6–202 *Burglary.*
(1) A person is guilty of burglary if he [or she] enters or remains unlawfully in a building or any portion of a building with intent to commit a felony or theft or commit an assault on any person.
. . . .
76–6–203 *Aggravated Burglary.*
(1) A person is guilty of aggravated burglary if in attempting, committing, or fleeing from a burglary the actor or another participant in the crime:
(a) causes bodily injury to any person who is not a participant in the crime;
(b) uses or threatens the immediate use of a dangerous weapon against any person who is not a participant in a crime; or
(c) possesses or attempts to use any explosive or dangerous weapon.

**26.** 648 P.2d 71 (Utah), *cert. denied,* 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982).

**27.** 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).

**28.** *Tillman,* 750 P.2d at 568–72; *id.* at 580–82 (Stewart, Assoc. C.J., concurring and concurring in the result); *id.* at 583 (Howe, J., concurring in the result).

Tillman has not argued, nor do we find, any unusual circumstances that would require readjudication of that ground for relief.

For obvious reasons, Tillman does not question the sufficiency of the evidence to support the aggravating circumstances of burglary and aggravated burglary. The elements of each are clearly met. A person who unlawfully enters or remains in a building with the intent to commit a felony is guilty of burglary.[29] Uncontroverted evidence shows that Tillman secretly entered Schoenfeld's house with the intent to kill the victim. Clearly, the jury had adequate evidence upon which to conclude that Tillman committed burglary.

■ The evidence also shows that Tillman entered the house with the intent to kill and that he caused bodily injury to Schoenfeld with an ax while in the house. A person who, in committing a burglary, causes bodily injury to, or uses or threatens use of a dangerous weapon against, any person who is not a participant in the crime is guilty of aggravated burglary.[30] The crime of aggravated burglary, therefore, is supported by the evidence.

With respect to arson, however, Tillman argues that the evidence does not support the crime.[31] He claims that burning the mattress was incidental to the intended burning of the corpse; therefore, the mens rea for arson is not met. This argument is frivolous.

■ A person who by means of fire unlawfully and intentionally damages the property of another is guilty of arson.[32] The evidence shows that Tillman intended to and, in fact, did burn Schoenfeld's mattress. The crime of arson is clearly supported by the evidence. That Tillman also intended to burn Schoenfeld by setting the mattress on fire does not negate the conclusion that Tillman committed the crime of arson as defined by statute.[33]

Tillman also argues that the evidence supporting the aggravating circumstance of aggravated arson was legally inadequate. Aggravated arson is committed when one intentionally and unlawfully damages a habitable structure by fire. Tillman contends that the elements of aggravated arson are lacking because there was no evidence of his intent to burn a habitable structure and no actual burning of a habitable structure.[34]

An attempt to commit aggravated arson can be the aggravating circumstance elevating an intentional killing to first degree

---

**29.** *See* Utah Code Ann. § 76–6–202.

**30.** *See* Utah Code Ann. § 76–6–203.

**31.** Utah Code Ann. §§ 76–6–101, –102, and –103 describe the offense of arson and aggravated arson:

PROPERTY DESTRUCTION

76–6–101 *Definitions.*

For purposes of this chapter:

(1) "Property" means any form of real property or tangible personal property which is capable of being damaged or destroyed and includes a habitable structure.

(2) "Habitable structure" means any building, vehicle, trailer, railway car, aircraft, or watercraft used for lodging or for assembling persons or conducting business whether a person is actually present or not.

(3) "Property" is that of another, if anyone other than the actor has a possessory or proprietary interest in any portion thereof.

. . . .

76–6–102 *Arson.*

(1) A person is guilty of arson if under circumstances not amounting to aggravated arson, he [or she] by means of fire or explosives unlawfully and intentionally damages:

(a) any property with the intention of defrauding an insurer; or

(b) the property of another.

. . . .

76–6–103 *Aggravated Arson.*

(1) A person is guilty of aggravated arson if by means of fire or explosives he [or she] intentionally and unlawfully damages:

(a) a habitable structure; or

(b) any structure or vehicle when any person not a participant in the offense is in the structure or vehicle.

**32.** *See* Utah Code Ann. § 76–6–102.

**33.** Tillman also argues that because arson can be a misdemeanor, the Utah legislature could not have intended it to elevate an intentional killing to a capital offense. We find no merit to this contention. Clearly, the legislature did intend the commission of or attempt to commit arson as an aggravating circumstance. *See* Utah Code Ann. § 76–5–202(1)(d).

**34.** *See* Utah Code Ann. § 76–6–103(1)(a).

murder,[35] and the jury was so instructed. A person who acts with the kind of culpability otherwise required for the commission of the offense and engages in conduct constituting a substantial step toward commission of the offense is guilty of attempt.[36]

■ Arguably, no habitable structure was burned in this case; the fire burned only the mattress on which Schoenfeld lay, Schoenfeld's body, and portions of the carpet. The evidence, however, was sufficient to support a finding of attempted aggravated arson. Photographs, diagrams, and eyewitness testimony established that the burned bed was in Schoenfeld's bedroom and the head of the bed was adjacent to a wall. The fire was started between 12 and 1 a.m., the approximate time of Schoenfeld's death. Tillman and Sagers set the mattress ablaze and left the bedroom door shut. A firefighter testified that he saw nothing on the mattress that would have prohibited the spread of flames to the wall, and an arson investigator testified that a mattress fire could cause the destruction of a building. The facts, therefore, support the conclusion that when Tillman lit the mattress on fire, he intended to set fire to Schoenfeld's house, a habitable structure. Hence, Tillman's conduct also constituted a substantial step in the commission of aggravated arson.

■ With respect to both arson and aggravated arson, Tillman argues that neither offense could constitute an aggravating circumstance for first degree murder because Tillman and Sagers believed Schoenfeld to be dead and intended the fire to be only a means of concealing the murder. The evidence, however, showed that Schoenfeld died of carbon monoxide poisoning as a result of the fire, and Sagers' uncontroverted testimony was that Schoenfeld

was alive when the fire was started and that she and Tillman knew this. In response to questioning by the prosecutor, she testified as follows:

Q. Could you tell whether he was still alive?

A. Yes, he was.

Q. How do you know?

A. You could see him and hear him breathing.

Q. Did you make any comments to ElRoy about that fact or he to you?

A. As we were leaving, ElRoy asked me if he should hit him again.

Q. What did you say?

A. I says, "no."

Q. Anything else?

A. ElRoy said he wanted him dead.

Q. Did you say anything back?

A. And I said the fire would probably do it.

This evidence is sufficient to support a finding of an intentional killing by means of the fire.[37]

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

Tillman claims that he was denied effective assistance of counsel at both the trial and on direct appeal. He argues that his trial counsel was ineffective in (1) failing to object to prejudicial comments by the prosecutor; (2) failing to object to the amendment of the information; (3) failing to request a specific instruction for unanimity on the aggravating circumstances for first degree murder; (4) submitting an overly broad instruction on second degree murder; and (5) failing to move to dismiss or strike the underlying crimes constituting aggravating circumstances because the crimes were not proved. Tillman further argues that his appellate counsel was ineffective in

---

**35.** *See* Utah Code Ann. § 76–5–202(1)(d).

**36.** *See* Utah Code Ann. § 76–4–101(1).

**37.** Tillman argues that even if intentionally burning a live victim to death were to be an aggravating circumstance, it would not fall under arson statutes referring to burning of property as the criminal object, but rather would fall under subsection (q) of the first degree murder

statute encompassing especially heinous types of killing or would fall under its own subsection such as bomb, subsection (*l*), or poison, subsection (n). Utah Code Ann. § 76–5–202(1). We find no merit to this argument. The fact that the legislature included arson on a list of serious crimes, *see id.* § 76–5–202(1)(d), is sufficient to make it an aggravating crime.

not adequately addressing "certain of those issues on [direct] appeal."

■ To prevail on a claim of ineffective assistance of counsel, a defendant must show that his or her counsel rendered a deficient performance that fell below an objective standard of reasonable conduct and that the deficient performance prejudiced the defendant.[38] Tillman urges this court to adopt a higher standard of review of his counsel's effectiveness because this is a death penalty case and because trial and appellate counsel were one and the same.

■ While we recognize the particular need for effective representation in a death penalty case, we do not believe that a higher standard of review is warranted. The *Strickland* standard achieves an adequate balance between the policy of finality and the preservation of constitutional rights. Although there may be theoretical logic to the proposition that counsel on appeal cannot be trusted to raise issues of his or her own ineffectiveness at trial, there are two reasons why the conclusion suggested by that logic is incorrect. First, our experience has been that counsel in this state have complied with their ethical obligations and argued their own ineffectiveness on appeal. Second, because of the plain error doctrine and the scope of review we exercise in capital cases, we have ourselves reviewed the record and addressed issues not reviewed by counsel, as we have done in this case, and reversed on such issues when appropriate.[39] Hence, we decline to adopt a higher standard for the ineffective assistance of counsel claim in this case.

■ Tillman first argues that trial counsel's failure to object or otherwise remedy prejudicial comments by the prosecutor constitutes ineffective assistance. Specifically, he assails his counsel's failure to object to the prosecutor's inflammatory comment "when [Tillman] bludgeoned [Schoenfeld] to death with an ax and then to further disfigure him, set fire to him while he was still breathing." On direct appeal, this court held that certain statements the prosecutor made during the guilt and penalty phases of the trial and not contemporaneously objected to by trial counsel were not grounds for reversal.[40] The statement quoted was one of the comments at issue regarding the prosecutor's discussion of the life sentence.[41] Comments held not to have prejudiced the defense cannot be the basis for an ineffective assistance claim.

■ Moreover, most of the prosecutor's comment at issue was true: There was evidence that Tillman bludgeoned Schoenfeld with an ax, arguably to death, and set fire to him while he was still breathing. The remaining statement that Tillman set fire to Schoenfeld to disfigure him is not necessarily inflammatory and, in any event, could not have affected the verdict. Hence, the requirement of prejudice under the *Strickland* test is simply not met.

Second, Tillman argues that trial counsel's failure to object to the amendment of the information constitutes ineffective assistance. In light of our conclusion that the amendment to the information was not prejudicial, failure to object could not constitute ineffective assistance.

■ Tillman's third claim is that trial counsel's failure to request a specific instruction for unanimity on the aggravating circumstances for first degree murder amounts to ineffective assistance. As previously stated, this court held on direct appeal that a jury must be unanimous with respect to the aggravating circumstance(s) of a first degree murder conviction.[42] The

**38.** *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *State v. Carter,* 776 P.2d 886, 893 (Utah 1989).

**39.** *See State v. Holland,* 777 P.2d 1019 (Utah 1989); *see also State v. Bishop,* 717 P.2d 261 (Utah 1986); *State v. Wood,* 648 P.2d 71 (Utah), *cert. denied,* 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982).

**40.** *Tillman,* 750 P.2d at 553–57.

**41.** *See id.* at 583 (Durham, J., concurring and dissenting).

**42.** *Tillman,* 750 P.2d at 577–80 (Stewart, Assoc. C.J., concurring and concurring in the result); *id.* at 585–88 (Durham, J., concurring and dissenting); *id.* at 591 (Zimmerman, J., concurring and dissenting).

instructions given were not perfect on this point, but they did not violate the rule.[43] Thus, counsel's failure to request an instruction demanding specific unanimity did not prejudice Tillman.

Fourth, Tillman argues that trial counsel's submission of an overly broad instruction on second degree murder renders his counsel's representation ineffective. The instruction at issue provided:

> Before you can convict the defendant of the crime of CRIMINAL HOMICIDE, MURDER IN THE SECOND DEGREE, a First Degree Felony, you must find from the evidence, beyond a reasonable doubt, all of the following elements of that crime:
>
> 1. That on or about May 26, 1982, in Salt Lake County, State of Utah, the defendant, ElRoy Tillman:
>
> a. Acted intentionally or knowingly in causing the death of Mark Schoenfeld; or
>
> b. Intending to cause serious bodily injury to Mark Schoenfeld, committed an act clearly dangerous to human life that caused the death of Mark Schoenfeld; or
>
> c. Acting under circumstances evidencing a depraved indifference to human life, he engaged in conduct which created a grave risk of death to Mark Schoenfeld, and thereby caused the death of Mark Schoenfeld; or
>
> d. While in the commission, attempted commission of burglary, aggravated burglary, arson or aggravated arson, caused the death of Mark Schoenfeld.
>
> If you believe that the evidence establishes each and all of the essential elements of the offense beyond a reasonable doubt, it is your duty to convict the defendant. On the other hand, if the evidence has failed to so establish one or more of said elements then you should find the defendant not guilty.

This instruction mirrors the requirements of second degree murder in our statute.[44] The instruction was therefore not incorrect or prejudicial.

■ Fifth, Tillman alleges that trial counsel's failure to move to dismiss or strike the underlying crimes that constituted aggravating circumstances on the grounds of lack of evidence rendered his assistance ineffective. However, because there was sufficient evidence to support the State's proof on each of the charged aggravating circumstances, counsel's failure to move to dismiss or strike was not error.

■ Finally, Tillman argues that appellate counsel's failure to raise on direct appeal the issues presented in this petition constitutes ineffective assistance. Each of the challenges to Tillman's conviction and sentence raised in this petition for habeas corpus has been addressed and rejected on its merits, not on the basis of waiver.[45] Therefore, appellate counsel's failure to raise them on direct appeal did not prejudice Tillman.

Affirmed.

HOWE, Associate C.J., concurs.

DURHAM, Justice (concurring separately):

Justice Stewart's dissenting opinion states that "a majority of the Court has never decided whether the unanimity instruction was correct or harmless error if incorrect." I think that he is wrong. Chief Justice Hall and Justice Howe considered the issue and concluded that the instruction was correct because of their (minority) view on the requirements of the unanimity standard.[1] Justice Stewart agreed with this conclusion, albeit on different grounds. He concluded that una-

---

**43.** *See Tillman,* 750 P.2d at 579–80 (Stewart, Assoc. C.J., concurring and concurring in the result).

**44.** *See* Utah Code Ann. § 76–5–203(1).

**45.** Tillman's argument that the prosecutor's inflammatory statements require reversal of his conviction and sentence, which was rejected in section III of this opinion as untimely, was addressed on its merits in the ineffective assistance of counsel portion of the opinion.

**1.** *See State v. Tillman,* 750 P.2d 546, 562–68 (Utah 1987) (plurality opinion by Hall, C.J.); *id.* at 582 (Howe, J., concurring in the result on this point).

nimity *was* required but that the instruction was adequate to convey this to the jury.[2] Justice Zimmerman and I concluded that the instruction was incorrect because it did not inform the jury that unanimity was required.[3] Therefore, each member of this court considered whether the instruction was correct, and a majority of the court held that it was.

In a footnote, Justice Stewart noted in dicta his view that the instruction would be harmless even if it were erroneous.[4] According to his *holding*, however, the instruction was *correct*. No other justice joined in his harmless error dicta. Chief Justice Hall and Justice Howe presumably refrained because they found no error in the instruction under the standard they adopted for jury unanimity. I concluded that the instruction was "entirely inadequate" to inform the jury that it was required to decide unanimously on a specific aggravating factor to convict Tillman of first degree murder. *State v. Tillman*, 750 P.2d 546, 588 (Utah 1987) (Durham, J., concurring and dissenting). I did not consider whether the failure to instruct the jury properly on the aggravating circumstances could have been harmless, however, because I concluded that there was no basis for a first degree murder conviction at all under the merger doctrine. *Id.* Justice Zimmerman joined in that view. *Id.* at 591 (Zimmerman, J., concurring and dissenting).

The end result is that three justices joined in a *holding* predicated on the correctness of the instruction.[5] Justice Stewart continues in this habeas review to subscribe to that holding, but inexplicably proceeds to conduct a harmless error review of the giving of the instruction. As he says in his opinion, "[I]t is necessary ... to address on the merits in this habeas proceeding the issue of whether the failure to give a correct instruction on unanimity was harmless error." I do not understand how he can legitimately analyze the "failure to give a correct instruction" when he and two other justices held that the instruction was correct on direct appeal.[6]

I did not agree then, and do not agree now, with the dicta in his footnote and the analysis in his current opinion that the error was harmless in the guilt phase of the trial. Finally, I do not agree with his finding in this opinion that the error was *harmful* as to the penalty phase. I am not persuaded by his argument that the failure to require unanimity in the guilt phase affected the penalty phase. Even if the guilt phase instruction might have caused confusion in the penalty phase, it was clearly corrected by instruction 6 at the penalty phase, which informed the jury that "you may consider as aggravating circumstances only those circumstances listed above which you, as a jury, *unanimously found to exist beyond a reasonable doubt.*" (Emphasis added.) But I do not treat the question of harmfulness in any further detail, since neither Justice Stewart nor the court has ever held that the instruction was error in the first place; I regard the issue

---

2. *See id.* at 577–79 (Stewart, Assoc. C.J., concurring and concurring in the result).

3. *See id.* at 585–88 (Durham, J., concurring and dissenting); *id.* at 591 (Zimmerman, J., concurring and dissenting).

4. *Id.* at 580 n. 1 (Stewart, Assoc. C.J., concurring and concurring in the result).

5. Justice Stewart appears to assume that when a majority of the court agrees on a conclusion but they do so under different theories, there is no binding majority holding. This is incorrect. On direct appeal, three justices of this court concluded that the instruction was correct. The only way for the question to come properly before us for disposition now would be for Justice Stewart, Justice Howe, or Chief Justice Hall to change his view and determine that the

instruction was in fact error. Chief Justice Hall and Justice Howe might do so by applying the majority holding on unanimity from the direct appeal to the language of the instruction, an analysis they did not do at that time, and concluding that the instruction was erroneous. Justice Stewart could only do so by abandoning his earlier holding that the instruction was correct. Justice Zimmerman and I are not free to ignore the holding unless one of the majority who created it departs from it.

6. Contrary to the suggestion in Justice Stewart's opinion, what this court has previously *held* in the same case is not a mere "nicety." Rather, it goes to the core of the legitimacy of the exercise of judicial power.

as purely hypothetical. I note, however, that because I do not join Justice Stewart's conclusion that the instruction was harmless in the guilt phase or harmful in the penalty phase, it is not our disagreement over the holding in the direct appeal which decides this case.

I have not changed my views on this conviction and penalty since the direct appeal, but I regard myself bound by the majority holding in that opinion and therefore concur in the majority opinion's affirmance herein.

ZIMMERMAN, Justice (concurring):

I concur in Justice Durham's opinion. Contrary to Justice Stewart's assertion, I think a majority of this court did decide in the direct appeal that the instruction on unanimity given during the guilt phase was harmless. Because I am bound by this court's earlier ruling on that issue, and because I find no merit to Justice Stewart's recent revelation that harmful error was committed, but in the death penalty phase alone, I am compelled to vote to affirm the denial of the writ, even though I voted to vacate the conviction and the resulting sentence in the initial appeal.

STEWART, Justice (dissenting):

An issue crucial to the legality of the conviction and the death penalty in this case has not been decided by a majority of the justices of this Court on either the direct appeal or this appeal, even though it was discussed in the direct appeal. On this appeal, the majority does not address the issue, which is whether a conviction and death penalty can be sustained on a vote of less than a majority of the justices of this Court. For the reasons explained below, I would set the death penalty aside and remand for a new penalty hearing.

This issue arises because of the divisions in the Court in the first appeal. A jury convicted ElRoy Tillman of capital homicide and imposed the death penalty. A divided Court affirmed the conviction and the sentence on appeal in *State v. Tillman*, 750 P.2d 546 (Utah 1987). Although Chief Justice Hall's lead opinion stated the position of a majority of the Court on most issues, no one opinion stated the position of the majority on all issues. *Id.* at 550–77. Justice Stewart wrote an opinion concurring in part and concurring in the result in part. *Id.* at 577–82. Justice Howe also wrote a concurring and concurring in the result opinion. *Id.* at 582–83. Justice Durham wrote a concurring and dissenting opinion, *id.* at 583–91, as did Justice Zimmerman, *id.* at 591.

## I. SCOPE OF HABEAS CORPUS REVIEW

A proceeding for extraordinary relief in the form of a petition for habeas corpus constitutes a collateral attack on a conviction or sentence, or both.[1] The grounds on which a conviction may be successfully attacked are limited. The writ is not a substitute for a direct appeal, "especially for ordinary types of trial error that are not likely to affect the outcome of a trial." *Hurst v. Cook*, 777 P.2d 1029, 1034 (Utah 1989); *accord Bundy v. DeLand*, 763 P.2d 803, 804 (Utah 1988); *Andrews v. Shulsen*, 773 P.2d 832, 833 (1988); *Lopez v. Shulsen*, 716 P.2d 787, 788 (Utah 1986); *Codianna v. Morris*, 660 P.2d 1101, 1104 (Utah 1983). Issues resolved on direct appeal against a defendant may not be reasserted in a habeas proceeding, and issues that should have been raised on appeal are not legitimate

---

**1.** Rule 65B(b)(1) of the Utah Rules of Civil Procedure presently governs extraordinary relief proceedings. It provides for relief if "the commitment resulted in a substantial denial of rights." Although that rule spells out the procedure for asserting a petition for extraordinary relief, it is important to emphasize that substantively an extraordinary relief proceeding is a form of the writ of habeas corpus and has been referred to as such in innumerable cases over the years. *See Hurst v. Cook*, 777 P.2d 1029,

1035–37 (Utah 1989); *Thompson v. Harris*, 106 Utah 32, 42, 144 P.2d 761, 766 (1943). Of course, the writ of habeas corpus, which has always been available to challenge the legality of the detention of any person, is not confined to detentions under the criminal laws. For example, a parent or guardian may use the writ to obtain custody of an unlawfully detained child. *E.g., Harrison v. Harker*, 44 Utah 541, 142 P. 716 (1914).

grounds for seeking a writ of habeas corpus "except in unusual circumstances." *Codianna*, 660 P.2d at 1104; *see also Chess v. Smith*, 617 P.2d 341 (Utah 1980). Habeas corpus provides a means for collaterally attacking a conviction because of unusual circumstances that have led to an obvious injustice. Usually that means a substantial and prejudicial denial of a constitutional right.[2] *Hurst*, 777 P.2d at 1035. In *Martinez v. Smith*, 602 P.2d 700, 702 (Utah 1979), Justice Crockett restated the basic policy that has undergirded habeas corpus law in this state for decades:

It is true that we have repeatedly declared that any claims of error or impropriety should be asserted in the regular procedure provided for on appeals and that, if that is not done, the writ of habeas corpus may not be used as a belated appeal. Nevertheless, howsoever desirable it may be to adhere to the rules, the law should not be so blind and unreasoning that where an injustice has resulted the victim should be without remedy. For that reason, as indicated in the cited cases, the writ should be available in rare cases, where it appears that there is a strong likelihood that there has been such unfairness, or failure to accord due process of law, that it would be wholly unconscionable not to reexamine the conviction.

(Footnotes omitted.)

The "unusual circumstances" test is not a bright-line standard. A review of the cases indicates a variety of situations in which this Court has found "unusual circumstances" to exist. *See generally Hurst*, 777 P.2d at 1036. This Court has found unusual circumstances that justified addressing a claim on the merits, irrespective of whether we granted the petitioner the relief sought, in the following instances: (1) a claim that a new rule of law, effective after the direct appeal, should be applied retroactively to the defendant's conviction or death penalty hearing, *Andrews v. Morris*, 677 P.2d 81 (Utah 1983);

(2) a claim that a jury was selected in part on the basis of racial considerations, *Andrews v. Barnes*, 779 P.2d 228 (Utah) (per curiam), *cert. denied*, 493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 341 (1989); (3) a claim that a defendant was denied the effective assistance of trial or appellate counsel, *Fernandez v. Cook*, 783 P.2d 547 (Utah 1989); *Bundy*, 763 P.2d at 805; *Codianna*, 660 P.2d at 1108; *see also Chess*, 617 P.2d at 344; (4) a claim that the sentence imposed was not authorized by law or was otherwise illegal, *Helmuth v. Morris*, 598 P.2d 333, 335 (Utah 1979); *Rammell v. Smith*, 560 P.2d 1108 (Utah 1977); (5) a claim that there was such a possibility of prejudice against the defendant in the conduct of the trial as to make the trial fundamentally unfair, *Chess*, 617 P.2d at 344; *see also Andrews v. Barnes*, 779 P.2d 228, 229 (Utah 1989); *Andrews v. Haun*, 779 P.2d 229, 230 (Utah 1989); (6) a claim that the prosecution suppressed exculpatory evidence, *Codianna*, 660 P.2d at 1106; *Gallegos v. Turner*, 17 Utah 2d 273, 409 P.2d 386 (1965); (7) a claim of newly discovered evidence, *see State v. Lafferty*, 776 P.2d 631 (Utah 1989) (on reference from federal district court; proceeding was in the nature of habeas review); (8) a claim that a guilty plea was improperly taken, *Martinez v. Smith*, 602 P.2d 700 (Utah 1979); (9) a claim that the court convicting the defendant had no jurisdiction, *see, e.g., Sullivan v. Turner*, 22 Utah 2d 85, 448 P.2d 907 (1968); *Thompson v. Harris*, 106 Utah 32, 144 P.2d 761 (1943); (10) a claim that a conviction was based on a void statute or ordinance, *Morgan v. Salt Lake City*, 78 Utah 403, 3 P.2d 510 (1931).

I submit that the failure of a majority of this Court to address and resolve an issue critical to the legitimacy of a conviction and death penalty is an "unusual circumstance" and that the majority commits constitutional error by not doing so.

I now address how the issue arose, why the issue was not addressed on direct appeal, and how I think it should be resolved.

---

**2.** Rule 65B(b) was amended in 1991 to delete language requiring an allegation of a constitutional violation. Following our case law, Rule 65B(i) now allows a petitioner to seek extraordi-

nary relief by asserting only that "the commitment resulted from a substantial denial of rights." Utah R.Civ.P. 65B(b)(1) (1991).

## II. JURY UNANIMITY WITH RESPECT TO THE AGGRAVATING CIRCUMSTANCES

The aggravating circumstances charged were burglary, aggravated burglary, arson, and aggravated arson. The jury was not requested or directed to return special verdicts on the four types of capital homicide. Instead, the jury returned a general verdict of guilty of capital homicide, without specifying the aggravating circumstance or circumstances found.

On the direct appeal, Chief Justice Hall and Justice Howe were of the view, as stated in the lead opinion, that jury unanimity was not required in finding which aggravating circumstances defendant committed, so long as the jurors were unanimous on the ultimate issue of guilt. In other words, the jurors were entitled to find Tillman guilty of capital homicide, even if only some members of the jury found one aggravating circumstance while the remaining jurors found other aggravating circumstances.

That, however, was not the majority view. Justices Stewart, Durham, and Zimmerman joined to hold that Article I, section 10 of the Utah Constitution requires jury unanimity as to each element of an offense and that in a capital case the jury must unanimously agree on at least one aggravating circumstance. *Tillman*, 750 P.2d at 578–80 (Stewart, J., concurring in part and concurring in the result); *id.* at 585–88 (Durham, J., concurring and dissenting); *id.* at 591 (Zimmerman, J., concurring and dissenting). Justices Durham and Zimmerman would have reversed the conviction for that and other reasons, but they did not address the issue of whether the error in the unanimity instruction was harmless. Indeed, they expressly declined to undertake a harmless error analysis. *Tillman*, 750 P.2d at 588 (Durham, J., concurring and dissenting); *id.* at 591 (Zimmerman, J., concurring and dissenting). Justice Stewart stated his view that although the instructions on unanimity were not as explicit and detailed as was desirable, they were adequate because the jury would have construed them to require unanimity.[3] In a footnote, Justice Stewart also stated in passing that even if the unanimity instruction were error, it was harmless because there was no "real dispute in this case that the defendant in fact committed the arson, aggravated arson, burglary, and aggravated burglary." *Id.* at 580 n. 1.

In sum, Justices Durham, Zimmerman, and Stewart agreed in the abstract that jury unanimity was required, but only Justice Stewart stated that the instruction was adequate because even if incorrect, it was harmless. Because Chief Justice Hall and Justice Howe did not think that jury unanimity was required, they did not decide whether the instruction was correct or, if incorrect, whether it was harmless. In short, a majority of the Court has never decided whether the unanimity instruction was either correct or harmless error if incorrect.

The anomalous result of this highly unusual permutation of votes resulted in the

---

3. The main instruction was Instruction 15, which stated:

By the plea of not guilty the defendant denies each and every one of the essential elements of the charge, which elements are as follows:

1. That on or about May 26, 1982, in Salt Lake County, State of Utah, the defendant, ElRoy Tillman, caused the death of Mark Schoenfeld; and

2. That he acted intentionally or knowingly in causing the death of Mark Allen Schoenfeld; and

3. That at the time the homicide was committed, the defendant was engaged in the commission of, or attempting to commit burglary or aggravated burglary, and/or arson or aggravated arson.

If you find the State has proven beyond a reasonable doubt each and every one of these elements, then it is your duty to find the defendant guilty of the offense of criminal Homicide, Murder, First Degree, a Capital Offense.

affirmance of a conviction and death sentence on the basis of a single justice's vote on a critical constitutional issue. Thus, the position of the *only* justice to find the instruction valid became, in effect, the position of the entire Court. That result, especially in a capital case, robs the affirmance of its legitimacy.

On direct appeal, no justice of this Court noted this anomaly. Tillman could not have raised this issue on direct appeal because the issue did not appear until after this Court handed down its opinion. Therefore, it is obligatory for this Court to address the issue on the merits in this habeas proceeding because this Court, sitting en banc, can affirm a conviction and sentence only by a majority vote on all issues necessary to the disposition of a case.

Accordingly, it is necessary, in my view, to decide the issue of whether the conviction and death sentence can be sustained in light of established Utah law that jury unanimity is constitutionally required as to each element of an offense. Because no other member of the Court agreed with me on direct appeal that the unanimity instruction was correct, I feel obliged to assume, for purposes of this appeal, that it was not.[4] Therefore, I proceed to analyze whether the error was harmless.

Because it is impossible to know how the jury voted on the four aggravating circumstances and because it was possible, at least in the abstract, that the jury was not unanimous on any one circumstance, I must assume that there was no jury una-

nimity as to any aggravating circumstance. In this proceeding, Tillman contends that the evidence was not sufficient to support the aggravating circumstances of arson and aggravated arson. On direct appeal, Chief Justice Hall found that the evidence was sufficient to support the verdict finding Tillman guilty of capital homicide, *Tillman*, 750 P.2d at 566, but no other member of the Court concurred in that part of his opinion.[5] But even if all the other members had concurred in that finding, it would not have resolved the issue of harmless error. A finding that the evidence is sufficient to support a verdict is not the equivalent of a finding that an error is harmless, especially when the error is constitutional in nature.

In criminal cases dealing with nonconstitutional errors, an error is not harmless if there is such a high likelihood of a different outcome that our confidence in the jury's verdict is undermined. *State v. Bishop*, 753 P.2d 439, 477 (Utah 1988); *State v. Knight*, 734 P.2d 913, 919 (Utah 1987). We have not heretofore defined the standard for determining when a state constitutional error can be deemed harmless. *Bishop*, 753 P.2d at 500 (Zimmerman, J., concurring in the result); *State v. Hackford*, 737 P.2d 200, 205 n. 3 (Utah 1987). Under federal constitutional law, a conviction can be affirmed in some instances, notwithstanding a federal constitutional error, if the error is harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17

---

**4.** Justice Durham, in her separate concurring opinion, argues that Justices Hall and Howe "said that the instruction was correct because of their (minority) view on the requirements of the unanimity standard." In fact, they said no such thing. They did not even discuss the issue. Furthermore, it is not possible to deduce what their position would have been had they addressed the issue. It simply does not follow that because they thought that unanimity was not required as to the aggravating circumstances, they would have concluded that the instruction given would be appropriate under a rule requiring unanimity. Under no reasonable view of the meaning of the term "holding" can it be said that Justices Hall and Howe "held" that the instruction was correct. Thus, Justice Durham is plainly incorrect in her statement that "three justices joined in a *holding* [her emphasis] pred-

icated on the correctness of the instruction." Justice Durham's rationale would lead with equal force to the conclusion that she and Justice Zimmerman "held" that the instructional error was harmless, even though they expressly declined to reach that issue. In any event, capital cases ought not to be decided on such niceties.

**5.** Chief Justice Hall wrote:

The jurors could have believed defendant committed the murder under any of the aggravating circumstances since each circumstance was supported by the evidence and the proof of any or all beyond a reasonable doubt satisfied the same circumstance requirement under the first degree murder offense. *Tillman*, 750 P.2d at 566.

L.Ed.2d 705 (1967). In other instances, federal constitutional errors are per se reversible. *Rose v. Clark*, 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3105–06, 92 L.Ed.2d 460 (1986).

The constitutional rights of criminal defendants under the Utah Constitution are no less important in their sphere than are federal constitutional rights. For that reason, I would hold that a state constitutional error must be harmless beyond a reasonable doubt unless the error produces the kind of prejudice that must be deemed inherently harmful.

The constitutional error at issue here is subject to a harmless error analysis that requires a close examination of the evidence as to the aggravating circumstances of capital homicide, since it is only on those issues that the unanimity requirement might have been violated. As to the actual killing, there is no issue with respect to unanimity.

Tillman does not question the sufficiency of the evidence supporting the aggravating circumstances of burglary and aggravated burglary, but does contest the sufficiency of the evidence as to arson and aggravated arson.[6] Tillman's concession as to the sufficiency of the evidence on burglary and aggravated burglary does not, of course, resolve the harmless error issue.

The *only* direct evidence of Tillman's involvement in the crime, indeed the only evidence of his involvement at all, came from the testimony of Carla Sagers. According to her testimony, she was an equally culpable partner in the crime. Although the State could have prosecuted her as well for the crime of capital homicide, it decided, in effect, to buy her testimony by giving her *total* immunity from prosecution. There was no physical evidence, such as fingerprints, blood stains, etc., at the scene of the crime linking Tillman to the homicide. The police did not search either Tillman's or Sagers' apartment in an effort to find evidence of participation in the crime.

Moreover, Carla Sagers herself on a prior occasion had set out alone to kill Mark Schoenfeld, but withdrew before the final act. The case against Tillman turned totally on her questionable credibility.

Nevertheless, to have convicted Tillman, the jury must have accepted at least the main thrust of Sagers' testimony, and I am obliged to honor the jury's determination of her credibility to the extent it is undisputed that the jury made such a determination. Because the jury unanimously found beyond a reasonable doubt that Tillman was guilty of the killing, it is certain that the jury also unanimously found beyond a reasonable doubt that Tillman committed the killing during the commission of a burglary and aggravated burglary because the homicide occurred inside the victim's house while the victim was on his bed. The location of the killing necessarily meant that the killing took place during a burglary and an aggravated burglary.

Because the jury necessarily found beyond a reasonable doubt that Tillman committed burglary and aggravated burglary, and because proof of the crime of capital homicide requires proof of only one aggravating circumstance, it follows that the error in the unanimity instruction constituted harmless error beyond a reasonable doubt and that Tillman's conviction cannot be set aside.

### III. JURY UNANIMITY AND THE PENALTY PHASE

The issue of whether the failure to correctly instruct the jury with respect to unanimity on the aggravating circumstances constituted harmless error in the penalty proceeding requires a somewhat different analysis. Unlike the guilt phase, it is not possible to sustain the death penalty on the ground that burglary and aggravated burglary necessarily have been proved beyond a reasonable doubt because each of the four aggravating circumstances could have influenced the jury in imposing the penalty

---

**6.** Tillman argues that as a matter of law burglary and aggravated burglary cannot be aggravating circumstances because those two crimes were incidental to, or merged into, the crime of an intentional homicide. That argument was rejected on direct appeal. *Tillman*, 750 P.2d at 569–72; *id.* at 580–82 (Stewart, J., concurring in part and concurring in the result).

of death, given the uniquely delicate and profoundly consequential decision to impose a death penalty. *See generally State v. Holland,* 777 P.2d 1019 (Utah 1989); *State v. Wood,* 648 P.2d 71 (Utah), *cert. denied,* 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982). Assuming, as I have, that arson and aggravated arson were not found by all jurors to have been proved beyond a reasonable doubt in the guilt phase, it is not possible to assess what influence the aggravating circumstances of arson and aggravated arson may have had in persuading the jury to choose the death penalty over a life sentence. As to these aggravating factors, there is nothing inherent in the jury's conclusion of guilt that requires the subordinate conclusion that Tillman committed arson or aggravated arson.

Concededly, there was undisputed evidence of a fire that was started on the victim's mattress, but that does not determine the issue. Whether the fire would have burned the structure of the house as required by the statutory definition of aggravated arson is arguable. *See* Utah Code Ann. § 76-6-104 (1978). There was no *unarguable* evidence that Tillman or Sagers intended to burn the structure. I acknowledge that the evidence would be adequate under a sufficiency of the evidence standard, but it is not possible to conclude that the instructional error was harmless beyond a reasonable doubt.

In addition, the damage from the fire was minor. There is no evidence that the damage exceeded $5,000, the amount of damage a fire must cause to be a felony under the arson statute in effect at the time of the crime. Utah Code Ann. § 76-6-102(2) (1978). Thus, the setting of the fire may only have constituted a misdemeanor. I cannot conclude that the Legislature intended a misdemeanor to constitute an aggravating circumstance of capital homicide under Utah Code Ann. § 76-5-202(1)(d). To so conclude would create a grave question as to the constitutionality of arson as an aggravating circumstance in a case such as this.

In any event, it is possible that the jury unanimously found the existence of all aggravating circumstances beyond a reasonable doubt.

The issue of the effect of whether the jury was properly instructed with respect to unanimity on the aggravating circumstances is complicated in the penalty hearing, however, because of the trial court's Instruction No. 6, which stated:

> You may consider as aggravating circumstances the very matters which you found to be present beyond a reasonable doubt as elements of the offense of first-degree murder in the guilt phase. The aggravating circumstances upon which you were instructed in the guilt phase were as follows:
>
> The defendant intentionally or knowingly caused the death of Mark Allen Schoenfeld under any of the following circumstances:
>
> The homicide was committed while the actor was engaged in the commission of, or an attempt to commit burglary or aggravated burglary and/or arson or aggravated arson.
>
> Under this instruction you may consider as aggravating circumstances only those circumstances listed above which you, as a jury, unanimously found to exist beyond a reasonable doubt.

The last sentence of this instruction states that the jury should consider as aggravating circumstances "only those circumstances listed above which you, as a jury, unanimously found to exist beyond a reasonable doubt." That language correctly stated the law and was not confusing concerning the requirement of unanimity as to the aggravating circumstances that could be considered. But the first sentence of the instruction interjects confusion; it carries forward into the penalty phase the lack of clarity as to the necessity for jury unanimity that arose in the guilt phase because it states that the "very matters which you found to be present beyond a reasonable doubt as elements of the offense of first-degree murder in the guilt phase" may be considered as aggravating circumstances. That sentence suggests

that an aggravating circumstance found in the guilt phase, potentially by less than a unanimous jury, could be considered in the penalty phase, even though the last sentence states otherwise. Because of this conflict in Instruction 6, the jury could have misapplied the law as to the requirement of unanimity in the penalty phase.

This confusion is compounded by an even more serious error in Instruction 6. The last sentence of Instruction 6 requires the jury to find the aggravating circumstances beyond a reasonable doubt. Reasonable doubt is defined in Instruction 12 as follows:

> If after an impartial consideration and comparison of all the evidence in the case you can candidly say that you are not persuaded that the death penalty should be imposed, you have a reasonable doubt. But if after such impartial consideration and comparison of all the evidence you can truthfully say that you have been persuaded so as to have an abiding conviction that the death penalty is appropriate in this case, *such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt. A reasonable doubt must be a real, substantial doubt and not one that is merely possible or imaginary.*

(Emphasis added.)

This instruction was palpably erroneous. In *State v. Johnson,* 774 P.2d 1141 (Utah 1989), a majority of the Court made clear that such an instruction in the guilt phase of a criminal case was erroneous. 774 P.2d at 1147–49 (Stewart, J., concurring in the result, joined by Durham, J., and Zimmerman, J.); *see also State v. Young,* 853 P.2d

327, 345–346 (1993). The beyond-a-reasonable-doubt standard is unique to the law. *Johnson,* 774 P.2d at 1148. Instructing jurors that they may impose the death penalty with only the degree of certainty that jurors rely on in determining whether to buy a home, make financial investments, change jobs, or marry is utterly inappropriate and clearly unconstitutional. Human error in making "weighty and important" decisions in the conduct of one's personal life is common, as shown, for example, by the high divorce rate and large numbers of bankruptcies. Of course, many of those decisions can be corrected, unlike the irreversible decision to execute. In truth, people do not make the weighty and important decisions in their lives with the same care and attitude the law demands from a jury when it authorizes the extinguishment of a life. For a court to instruct a jury to decide the issue of life or death on that basis is unlawful. *See State v. Wood,* 648 P.2d at 80–82; *see also Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (instruction in guilt phase equating reasonable doubt with "grave uncertainty" and "actual substantial doubt" is violation of Due Process Clause). Allowing a jury to impose a death sentence on that basis is indefensible.[8] I would reverse the death penalty and remand for a new hearing on this basis alone.

In addition, Instruction 13 in the penalty phase made it the jury's duty, in effect, to impose the death penalty if the aggravating circumstances outweighed the mitigating circumstances. It was *not* the *duty* of the jury to impose the death penalty if it found that the aggravating circumstances outweighed the mitigating circumstances.

---

**8.** I acknowledge that the correctness of the definition of the reasonable doubt standard as discussed above was not raised by counsel on direct appeal or on this appeal. A different assertion of error in the instruction was raised on direct appeal. *State v. Tillman,* 750 P.2d at 572–73. The error asserted was that the instruction shifted the burden of proof in the guilt phase and the burden of persuasion in the penalty phase to defendant. That construction was rejected by the Court. No issue was raised or addressed, however, as to the definition of the reasonable doubt standard. This Court is obli-

gated to review for plain error in capital cases, and the issue should be addressed now. In *State v. Holland,* 777 P.2d at 1026, we stated: "In capital cases, this Court engages in a 'comprehensive review' of the record for manifest or plain error, whether or not raised for the first time on appeal and even though there was no objection at trial[.]" The error in the reasonable doubt instruction in this case is clearly plain error in my view, especially because of its tie-in to the unanimity and harmless error issues.

In fact, the jury had no *duty* to impose the death penalty at all, irrespective of how it weighed the evidence. The law in this state is that the jury *may* impose the death penalty if the requirements of *Wood* and *Holland* are met. If a single juror harbors doubt that the death penalty is appropriate, then the duty of the jury is to impose a life sentence. It is inconsistent with the jury's duty, properly stated and understood, for the trial judge to instruct, as he did here, that if the jury could not agree on the death penalty, then it would be discharged (as if it had failed in its duty) and the judge would impose a life sentence. Indeed, the trial judge should have informed the jury that a life sentence is presumptively a correct sentence. *See State v. Pierre*, 572 P.2d 1338, 1347–48 (Utah 1977), *cert. denied*, 439 U.S. 882, 99 S.Ct. 219, 220, 58 L.Ed.2d 194 (1978). In my view, a jury ought to be told that a life sentence is an appropriate sentence and that its task is to choose between a life sentence and a death sentence.

In *State v. Young*, 853 P.2d at 384–385, Justice Durham detailed the legislative expansion of the circumstances in which the death penalty can be applied. Although I did not agree with her that the broadening of the death penalty statute made it an unconstitutional scheme, I am convinced that a limiting of the imposition of the death penalty in the penalty phase is essential to the continued constitutionality of the death penalty scheme. Therefore, if the instructions in the penalty phase do not succeed in narrowing the pool by enabling the jury to make reasonable distinctions, based on sound moral-legal principles for a death penalty, between those who should be given life sentences and those who should be given death sentences, the Utah death penalty statute will truly stand in grave constitutional jeopardy. It seems that juries are increasingly rubber stamping prosecutors' requests for the death penalty. This Court cannot be true to the constitutions of the state and nation and allow the discretion of the prosecutor to be the de facto basis for selecting those to be executed by the state.

There were mitigating factors in this case. Tillman's family testified on his behalf. Virtually all of the State's case against Tillman came from a person who, herself, could have been prosecuted for capital homicide and yet was given *total* immunity from prosecution. The criminal law, for wholly pragmatic reasons, appears to have been applied discriminatorily. Furthermore, Carla Sagers' testimony on some points was clearly contrived. Tillman had no record of any prior homicide, a factor that has been significant in a number of death penalty cases in this state, especially where there was only one homicide. Finally, although Tillman has a criminal record, his most serious crimes were committed more than twenty years ago, and only one, attempted robbery committed in 1962, appeared to be a crime of violence.

In my view, the penalty of death should be vacated and a new penalty hearing should be held.